UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

Eastern District of Kentucky
**FILED**

APR 1   2005

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

KATRINA EVERSOLE,
on behalf of herself and
all others similarly situated

CASE NO. 05 -124 - KSF

Plaintiff,

vs.

CLASS REPRESENTATION

EMC MORTGAGE CORPORATION,

Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, KATRINA EVERSOLE, on behalf of herself and all others similarly situated, sue

Defendant, EMC MORTGAGE CORPORATION ("EMC"), for damages and injunctive relief.

### NATURE OF THE ACTION

1.     This is a class action brought pursuant to Rule 23(b)(2) and (b)(3) of the Federal

Rules of Civil Procedure.

2.     EMC services single family and residential mortgages, and specializes in the

nonperforming, subperforming, or subprime markets, which is comprised of persons who are

considered to be greater credit risks and, thus, may not meet the strict underwriting standards

required to qualify for prime, or "A," credit.

3.     At all times material to this Complaint, through its mortgage servicing business, EMC

has engaged in a common course of conduct, which has consisted of the routine failure to promptly

post and account for mortgage payments accurately, and dissemination of false and misleading information to consumers about the payments they owe on their mortgages.

4.    Plaintiff files this Class Action Complaint on behalf of herself and all other similarly situated consumers within Kentucky whose mortgages EMC services to redress the injuries they have suffered, continue to suffer, and will suffer in the future as a direct result of Defendant's violations of Kentucky law, including Ky. Rev. Stat. §§ 367.110 *et seq*.

## PARTIES

5.    Plaintiff Katrina Eversole (hereafter "Eversole" or "Plaintiff") owns property in Lexington Kentucky, which is under a mortgage served by EMC.

6.    Whenever in this Complaint reference is made to a "consumer" or "consumers," such reference includes Plaintiff and Class Members, who are individuals whose residential mortgages EMC services.

7.    Defendant EMC is foreign corporation and maintains its principal place of business in Irving, Texas. EMC is a wholly owned subsidiary of The BearStearns Companies, Inc. EMC has registered with the state of Kentucky to conduct business here as a for-profit corporation.

8.    Whenever in this Complaint reference is made to any act or omission of EMC, such allegations shall be deemed to mean that the directors, officers, agents, employees, partners, contractors, or representatives of said corporate defendant, did or authorized such act or omission while actively engaged in the management, operation, control or representation of the affairs of said corporate Defendant, and while acting within the course and scope of their agency, employment, contract, representation and capacity.

2

## JURISDICTION AND VENUE

9.      This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as amended. The aggregate amount in controversy exceeds $5,000,000.

10.     The Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b), in that:

a.      A substantial part of the acts or omissions giving rise to Plaintiff's claim occurred in this District;

b.      This District is where Plaintiff's mortgaged property involved in her suit is located; or,

c.      EMC transacts business, committed an illegal or tortious act in, maintains agents or representatives in, or is found in this District.

## FACTS COMMON TO ALL COUNTS

12.     Since at least January 2001, EMC has operated as a mortgage servicer throughout the United States, specializing in servicing of residential mortgage loans, primarily in the "subprime" market.

13.     EMC acts as a go between for the borrowers and the investors that hold the mortgage loans of the borrowers EMC services.  EMC's serving duties consist primarily of collecting the borrower's payments, maintaining all of the necessary accounts (including an escrow account for taxes and insurance if applicable) and making the necessary disbursements (including remittance of principal and interest to investors and disbursements for taxes and insurance).  In exchange for performing these duties, investors pay EMC a fee.

3

14.     In its role as servicer of consumer mortgages, EMC holds a position of trust and significance for consumers. EMC owes a legal duty to account for and apply consumers' on-time mortgage payments to reduce principal and interest properly and in a timely manner, and EMC owes a legal duty to maintain and report properly and accurately to consumers' mortgage holders, the government, and consumer reporting agencies that determine consumers' credit ratings. When EMC and other mortgage servicers breach their duties to consumers, they may materially affect consumers' employment, insurance rates, creditworthiness, and other very significant aspects of consumers' lives.

### EMC's Common Course of Conduct

15.     From at least January 2002 until present, EMC has engaged in a widespread, common course of conduct, which has caused injury in fact and ascertainable loss to consumers, including Plaintiff and the Class.

16.     EMC's injurious course of conduct has consisted of the following systemic corporate practices, which EMC regularly implemented and maintained through its authorized agents and employees:

a.     Making expressly or by implication standardized mortgage-related oral and written representations to consumers, containing material, false and misleading debt collection information relating to required payments, application of mortgage payments, or delinquencies or delinquency-related penalties on their mortgages;

b.     Claiming, attempting, or threatening to enforce debts, including foreclosure or collection actions against consumers, when EMC knew or should have known that the debts were not legitimate;

4

c.    Depriving consumers from the benefit of reduced principal and interest under their mortgages and imposing unwarranted interest payments on consumers, by:

(a)    Placing or suspending all or part of consumers' mortgage payments in accounts it creates, other than ones to reduce principal and interest or for escrow purposes, as called for under consumers' mortgages;

(b)    Applying consumer mortgage payments to cover unwarranted delinquency-related fees or arrearage, rather than to the principal and interest; and,

(c)    Failing to promptly or accurately credit timely mortgage payments to principal and interest, leading to the imposition of unwarranted delinquency-related fees, greater interest and principal being owed and paid over the life of the loan;

d.    Asserting the existence of legal rights against consumers relating to their mortgage payments and delinquencies, when EMC knew or should have known that such rights did not exist; and,

e.    Willfully or intentionally engaging in the conduct described above which could reasonably be expected to abuse or harass or injure a consumer or a member of her or his family.

17.    EMC has and will continue to aggrieve consumers by the foregoing course of conduct, and EMC has and will continue to engage in foregoing unlawful course of conduct, unless this Court issues an injunction preventing further violations of the law.

## **ALLEGATIONS RELATING TO CLASS PLAINTIFF**

18.    Plaintiff Katrina Eversole owns real estate at 644 Smugglers Notch Drive, Lexington, Kentucky, which is under a mortgage serviced by EMC. Ms. Eversole is a single mother, first-time homeowner, and has never been late with a mortgage payment.

5

19.     In or about August 2004, Ms. Eversole entered a variable rate mortgage and promissory note with a lender called The CIT Group/Consumers Finance, Inc. ("CIT").

20.     Under Ms. Eversole's mortgage and promissory note, her payments are due on the first of the month, and late if paid after the fifteenth of the month. The "Application of Payments" section of her promissory note states that payments will be applied to accured interest before the unpaid principal balance, and states nothing about accounting for Ms. Eversole's payments in any other manner.

21.     On or about January 8, 2005, Eversole received a notice from CIT that effective on or about January 1, 2005, EMC acquired servicing rights to Ms. Eversole's mortgage form CIT. However, CIT did not give her notice of the transfer to EMC, prior to January 1, 2005; and, in accordance with the terms of her mortgage and promissory note, Ms. Eversole mailed the January 2005 mortgage payment prior to its due date to CIT to the address she had for making mortgage payments.

22.     However, shortly after January 1, 2005, Eversole started receiving a barrage of invasive prerecorded telephone messages from EMC, at work and home, requesting her to call a toll-free number. On many days she received two calls by EMC per day. EMC placed one such call at 8:00 AM on a Saturday and another at 7:00 AM on a Monday. EMC's hounding of Ms. Eversole lasted through mid-February 2005.

23.     After the Saturday 8:00 AM call stated above, Ms. Eversole called EMC's toll-free number and an EMC representative informed her she was late on her mortgage payments and that EMC was going to foreclose because she did not make her January 2005 mortgage payment. Ms. Eversole tried to explain how and why she mailed her timely mortgage payment to her former

6

servicer CIT which it received on January 3, 2005, but the EMC customer service agent maintained that foreclosure was forthcoming.

24.     Since January 1, 2005, Ms. Eversole has telephoned and sent letters to EMC on several occasions to avoid its threatened foreclosure, ruination of credit rating, or to explain how EMC has been misapplying her timely mortgage payments and depriving her of the benefit of reduced principal and interest.

25.     In one instance, Ms. Eversole was told by an EMC representative that her February 2005 payment she timely sent to EMC was applied to the January 2005 payment that EMC claimed did not receive, which has left her one month behind according to EMC.

26.     In her February and March 2005 billing statements, EMC represented that Ms. Eversole was still a month behind, despite her timely payment and its receipt by CIT on January 3, 2005.

27.     On EMC payment coupons she returns with monthly payments to EMC, Eversole regularly marks the box for additional principal payment of $3.44 each month. However, EMC has failed to apply these principal payments to reduce principal at the time the payments were made.

28.     At the end of March 2005, EMC finally agreed to credit her account with her January 2005 but did not make the posting retroactive to January 3, 2005 when it was received, as Eversole had requested. This January 2005 payment was instead posted and accounted for in March 2005.

29.     As a result of the foregoing, EMC caused the same injury to Eversole as that suffered by the Class set forth in ¶ 16 above:

a.     EMC has failed to reduce principal in January 2005 and at other times in accordance with her mortgage by the amount of on-time mortgage payments and additional principal payments,

7

and more interest is due because the amount of principal upon which it was calculated was greater than it should have been;

b.      EMC's conduct has resulted in principal not being timely reduced and interested being calculated and owed by Eversole on a greater amount of principal than should be the case over the life of her mortgage;

c.      EMC has caused Ms. Eversole to owe more and to pay more than called for under her promissory note and mortgage, and deprived her of the benefit of timely reductions in principal and interest under her mortgage;

d.      EMC made expressly or by implication standardized mortgage-related oral and written representations to Eversole, which contained material, false and misleading debt collection information relating to required payments, application of mortgage payments, or delinquencies or delinquency-related penalties;

e.      EMC claimed it was entitled to foreclosure, when EMC knew or should have known that foreclosure was not legitimate and it had no legal right to foreclose;

f.      The foregoing conduct on the part of EMC was not by mistake but was intentional, and could reasonably be expected to abuse or harass or injure a Eversole or a member of her family.

30.     Based on the foregoing course of conduct, EMC has clearly caused injury in fact and cognizable loss to Ms. Eversole and other consumers.  EMC has and will continue to aggrieve Ms. Eversole and the Class and EMC has and will continue to engage in foregoing unlawful course of conduct, unless this Court issues an injunction preventing further violations of the law set forth below.

## CLASS REPRESENTATION ALLEGATIONS

31.     Plaintiff seek to represent a class of victims (the "Class" or "Class Members") against

Defendant EMC, defined as follows:

> Since January 2001, all individuals (1) who have given mortgages on residential
> property located in Kentucky (2) whose mortgage loan accounts relating to such
> property EMC has serviced and, (3) whose mortgage loan accounts EMC falsely
> represented to the individuals in writing as delinquent in its records, (4) when EMC
> failed to promptly or accurately credit the individuals' mortgage loan accounts with
> timely mortgage payments to reduce principal and interest.

To be excluded from the Class are persons employed by or otherwise related to EMC, or its

subsidiaries, their successors, or affiliates. Also to be excluded from the Class are any and all

members of the federal judiciary.

### Rule 23 Allegations

32.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this action may be

maintained as a class action because all procedural elements are satisfied as set forth below:

### 1. Numerosity

33.     The Class consists of thousands of consumers who have been aggrieved and suffered

losses through EMC's common course of conduct in servicing their mortgages,  although the exact

number of Class Members is within the exclusive knowledge of EMC and is readily discoverable

from EMC.

34.     Class Members are geographically diverse as they reside in different locations around

Kentucky.  The size of their individual claims will likely not exceed a few hundred dollars.  Under

such circumstances, this action promotes judicial economy and avoids inconvenience of Class

Members who would otherwise be forced to litigate their relatively small claims in separate actions.

9

35.     Accordingly, the Class is so numerous that it would be impractical to join all of the members of the Class within the meaning of Rule 23(a)(1).

### 2. Commonality

36.     On behalf of the Class, the representative Plaintiff brings claims which raise questions of law or fact common to all members of the Class, as contemplated by Rule 23(a)(2).  Common factual or legal questions include:

a.      Whether EMC engaged in a common course of conduct;

b.      Whether EMC routinely represented to Plaintiff and members of the Class that Plaintiff and members of the Class were delinquent in their mortgage payments, when such was not the case;

c.      Whether EMC routinely failed to apply Plaintiff and Class Members' timely mortgage payments accurately to reduce principal and interest;

d.      Whether EMC breached Class Members' mortgage agreements by its common course of conduct;

e.      Whether EMC violated §367.110 *et seq.*, by its common course of conduct;

f.      Whether Plaintiff and the Class Members have sustained ascertainable loss as well as the measure of such loss in monetary terms; and,

g.      Whether Plaintiff and Class Members are aggrieved and thus entitled to injunctive and/or declaratory relief.

### 3. Typicality

37.     In accordance with the requirements of Rule 23(a)(3), the representative Plaintiff's claims are typical of the claims of all other members of the Class, and the representative Plaintiff has no interests which are adverse or antagonistic to the interests of the Class.  The representative Plaintiff's claims are typical of the claims of the Class, in that: Plaintiff shares the claims underlying the common questions set forth in the preceding paragraph; and Plaintiff has suffered the injuries EMC caused Plaintiff and the Class set forth above in ¶¶ 15-30.

## 4. Adequacy

38.     In accordance with the requirements of Rule 23(a)(4), the representative Plaintiff and her counsel will fairly and adequately represent and protect the interests of each member of the Class. The representative Plaintiff and the Class share common interests which are not adverse, and the representative Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class action litigation.

## Rule 23(b)(2) Certification of Injunctive Class

39.     By and through its common course of conduct, EMC has acted on grounds generally applicable to the Class, thereby making permanent injunctive and declaratory relief on behalf of the entire Class appropriate, issued on grounds generally applicable to the entire Class.

## Rule 23(b)(3) Allegations

40.     The questions of fact or law common to the claims of each member of the Class, relating to EMC's common course of conduct, set forth above in ¶ 36, predominate over any facts affecting only individual members of the Class.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Class Members will continue to be injured by Defendant's violations of Kentucky law. The violations of law by Defendant will proceed without remedy while Defendant continues to ignore its legal obligations under the law, and individuals will be left unaware of the violation of their rights on a daily basis.

42.     Most individual Class Members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, injuries suffered by individual Class Members.

11

43.    This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

44.    This action presents no difficulty that would impede its management by the Court as a class action. When the liability of Defendant has been adjudicated, the damages of each Class Member can be administratively determined from Defendant's files.

## FIRST CAUSE OF ACTION
### (Violation of Consumer Protection Act)

45.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above as if fully set forth herein.

46.    EMC has a statutory duty pursuant to the Kentucky Consumer Protection Act, KRS § 367.110 *et seq.*, not to engage in unfair, false, misleading, and deceptive acts in the conduct of any trade or commerce.

47.    EMC, by engaging in the common course of conduct described in ¶¶ 15-30, has violated the Kentucky Consumer Protection Act, KRS § 367.170, in that such conduct is unfair, false, misleading, and deceptive acts in the conduct of any trade or commerce.

48.    Plaintiff and Class Members have mortgages which are primarily for personal, family, or household purposes; and EMC's common course of conduct toward Plaintiff and Class Members has caused them to suffer ascertainable loss of money and property interests.

49.    By reason of the foregoing, Plaintiff and Class Members have been damaged and are entitled to an award of compensatory damages in an amount to be determined at the trial of this matter. In addition thereto, Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs incurred in bringing this action.

50.     The Kentucky Consumer Protection Act also authorizes the award of equitable relief, including injunctive relief and disgorgement, which Plaintiff on behalf of herself and the Class prays for below.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

51.     Plaintiff realleges and incorporates by this reference the allegations set forth in paragraphs 1-44, as though fully set forth herein.

52.     EMC has breached the mortgages with Plaintiff and likewise with Class Members, by routinely:

a.      Claiming, attempting, or threatening to enforce debts, including foreclosure or collection actions against Plaintiff and the Class, when EMC knew or should have known that the debts were not legitimate under the terms of their mortgages;

b.      Depriving Plaintiff and the Class from the benefit of reduced principal and interest under the terms of their mortgages and imposing unwarranted interest payments on consumers as described in ¶ 16 above; and,

c.      Asserting the existence of legal rights against consumers relating to their mortgage payments and delinquencies, when EMC knew or should have known that such rights did not exist under the terms of the mortgages of Plaintiff and the Class.

53.     EMC's conduct caused Plaintiff and Class Members to suffer damages.

54.     All the conditions precedent for the filing of this action have been satisfied or otherwise waived.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

55.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-44 above, as if fully set forth herein.

13

56.     Plaintiff and Class Members do not have an adequate remedy at law.

57.     This is an action for equitable relief in the form of unjust enrichment, in the alternative to breach of contract, given that EMC engages in conduct, which is inequitable and not contemplated by Plaintiff and Class Members' mortgages.

58.     Plaintiff and Class Members have conferred a substantial benefit upon EMC in the form of payment of unwarranted amounts and increased indebtedness or obligations beyond the terms of their mortgages.   Defendant has knowledge of the benefit conferred upon them by Plaintiff and Class Members, and Defendant has voluntarily accepted and retained the benefits conferred upon them by Plaintiff and Class Members.

59.     Under the circumstances brought about by Defendant's course of conduct above, it would be inequitable for Defendant to retain this substantial benefit.   As a direct and proximate result of EMC's unlawful course of conduct and its inequitable retention of the benefits conferred upon it by Plaintiff and Class Members, Plaintiff and Class Members have suffered damages, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Money Had and Received)

60.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above, as if fully set forth herein.

61.     Plaintiff and Class Members do not have an adequate remedy at law.

62.     This is an action for equitable relief in the form of money had and received, in the alternative to breach of contract, given that EMC engages in conduct, which is inequitable and not contemplated by Plaintiff and Class Members' mortgages.

63.     EMC received monies from Plaintiff and Class Members for the payment of amounts in connection with their home mortgages. This money was received by EMC for use on behalf of Plaintiff and the Class Members.

64.     By its inequitable common course of conduct, EMC improperly allocated money received or imposed additional funds from Plaintiff and Class Members for the payment of amounts improperly assessed by EMC, and deprived Plaintiff and the Class of benefits due them. EMC did so with superior knowledge concerning the true sums owed under the mortgage agreements by Plaintiff and Class Members. Moreover, EMC took advantage of its superior position and misrepresented delinquencies to Plaintiff and the Class beyond that contemplated by Plaintiff and Class Members' mortgages.

65.     EMC is indebted to Plaintiff and Class Members for all such unwarranted amounts assessed and benefits from which they have been deprived.

66.     By reason of the foregoing, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

67.     Plaintiff realleges and incorporates by this reference the allegations set forth in paragraphs 1-43 above, as though fully set forth herein.

68.     Plaintiff, on behalf of herself and all Class Members, seek a judgment declaring Defendant's conduct unlawful, and that Defendant must cease the course of conduct described above and providing for adequate procedures and policies for the immediate and complete refund of illegal and unwarranted amounts assessed.

15

69.     Plaintiff and Class Members do not have a plain, adequate, speedy or complete remedy at law to address the wrongs alleged in this Complaint and will suffer irreparable injury as a result of Defendants' misconduct unless injunctive or declaratory relief is granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Defendant, as follows:

(a)     Certify this action as a class action and designate Plaintiff as the representative thereof;

(b)     Award Plaintiff and members of the Class damages attributable to Defendant's failure to promptly or accurately credit the individuals' mortgage loan accounts with timely mortgage payments to reduce principal and interest;

(c)     Award Plaintiff all attorneys' fees, and the costs and expenses incurred in this action;

(d)     Temporarily or Permanently enjoining Defendant continuing to engage in the course of conduct set forth in ¶¶ 15-30 above, and requiring it to implement procedures to avoid such conduct in the future;

(e)     Temporarily or Permanently enjoining Defendant to adopt adequate procedures and policies for the immediate and complete refund of illegal and unwarranted amounts assessed on Plaintiff and Class Members' mortgages;

(f)     Otherwise awarding Plaintiff and Class Members declaratory and injunctive relief as permitted by law or equity, and awarding such relief as the Court finds necessary to redress injury to Plaintiff and similarly situated consumers resulting from Defendant's course of conduct, including, but not limited to, declaring Defendant to be in violation of Class Members' mortgages, refund of monies, restitution, and the disgorgement of ill-gotten gains and of all monies (plus interest

16

thereon at the legal rate) acquired by means of any act or practice declared by this Court to be in breach of contract, tortious or unlawful; and

(g)     Grant such other and further relief as may be appropriate under the circumstances.

**Trial by Jury**

Plaintiff demands trial by jury of all issues so triable in this action.

PARRY DEERING FUTSCHER & SPARKS, P.S.C.

By _____

Robert R. Sparks
411 Garrard Street
Covington, Kentucky   41011
(859) 291-9000
Fax (859) 291-9300

John A. Yanchunis
Florida Bar No. 324681
JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609
(813)286-4100
Fax(813)286-4174

Mark Fistos
Florida Bar No.: 0909191
JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.
3301 Thomasville Rd. A200
Tallahassee, FL 32308
(850)325-2680
Fax(850)325-2681

Steven Jaffe
Florida Bar No.: 390770
ARONOVITZ TRIAL LAWYERS
Suite 2700 * Museum Tower
150 West Flagler Street
Miami, Florida   33130
(305) 372-2772
Fax (305) 375-0243

17