Eastern District of Kentucky
FILED
MAY 2 6 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 05-124-KSF

KATRINA EVERSOLE,           PLAINTIFF
on behalf of herself and
all others similarly situated,

vs.

EMC MORTGAGE CORPORATION,           DEFENDANT

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, KATRINA EVERSOLE, on behalf of herself and all others similarly situated, sue Defendant, EMC MORTGAGE CORPORATION ("EMC"), for damages and injunctive relief.

### NATURE OF THE ACTION

1.    This is a class action brought pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

2.    Defendant EMC conducts business throughout the United States, including the Eastern District of Kentucky. It's business consists of the acquisition, securitization, servicing, and disposition of residential mortgage loans. In its role as mortgage servicer, EMC services single family and residential mortgages, particularly in the subprime market, which is comprised of persons who are considered to be greater credit risks.

3. At all times material hereto, as set forth below, through its mortgage servicing business, EMC has engaged in a common course of conduct, which has consisted of systemic corporate practices, EMC regularly implemented and maintained through its authorized agents and employees. These practices include the routine failure to promptly post and account for mortgage payments accurately, the dissemination of misleading or incorrect information to consumers about the payment amounts they owe on their mortgages, and the imposition of charges or indebtedness not contemplated by the terms of their mortgages.

4. Plaintiff brings this class action suit on behalf of herself and all other similarly situated consumers within Kentucky whose mortgages EMC services to redress the injuries they have suffered, continue to suffer, and will suffer in the future as a direct result of Defendant's violations of Kentucky law, including Ky. Rev. Stat. §§ 367.110 *et seq.*, breach of contract, unjust enrichment and money and received.

## PARTIES

5. Plaintiff Katrina Eversole (hereafter "Eversole" or "Plaintiff") owns property in Lexington Kentucky, which is under a mortgage served by EMC.

6. Whenever in this Complaint reference is made to a "consumer" or "consumers," such reference includes Plaintiff and Class Members, who are individuals whose residential mortgages EMC services.

7. Defendant EMC is foreign corporation and maintains its principal place of business in Irving, Texas. EMC is a wholly owned subsidiary of The BearStearns Companies, Inc. EMC has registered with the state of Kentucky to conduct business here as a for-profit corporation.

8. Whenever in this Complaint reference is made to any act or omission of EMC, such allegations shall be deemed to mean that the directors, officers, agents, employees, partners,

contractors, or representatives of said corporate defendant, did or authorized such act or omission while actively engaged in the management, operation, control or representation of the affairs of said corporate Defendant, and while acting within the course and scope of their agency, employment, contract, representation and capacity.

## JURISDICTION AND VENUE

9. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as amended.

10. The Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b), in that:

   a. A substantial part of the acts or omissions giving rise to Plaintiff's claim occurred in this District;

   b. This District is where Plaintiff's mortgaged property involved in her suit is located; or,

   c. EMC transacts business, committed an illegal or tortious act in, maintains agents or representatives in, or is found in this District.

## FACTS COMMON TO ALL COUNTS

12. Since at least January 2001, among other things, EMC has operated as a mortgage servicer throughout the United States.

13. EMC specializes in servicing of residential mortgage loans in the "subprime" market, which consists of consumer borrowers the mortgage industry designates as "B," "C" or "D" borrowers because they have little credit history or poor credit history.

3

14. According to the authors of a 2002 HUD study, "subprime borrowers are more likely to have low incomes or be members of minority groups than their primary market counterparts. Subprime borrowers in general also tend to be less financially knowledgeable and sophisticated and less comfortable dealing with banks." Temkin, Kenneth, et al., *Subprime Markets, the Role of GSEs, and Risk-Based Pricing*, prepared by the Urban Institute for the Department of Housing and Urban Development (March 2002).

15. EMC services mortgage loans of subprime consumer borrowers for the benefit of investors. In return for EMC's services, investors pay EMC fees pursuant to agreement.

16. On its website, www.emcmortgagecorp.com, EMC touts its business acumen and loyalty to investors in part as follows:

> Our management team has in-depth knowledge of customer service, collections, loan workouts, foreclosure administration, and accounting. All the while keeping the customer in mind, we at EMC execute the firm's value maximization philosophy and company strategy of thinking creatively. Regardless of investor, we strive to conduct each servicing function as if it were being administered to our own asset.

17. Pursuant to contracts with investors, EMC is compensated to take on mortgage serving duties including collecting consumer borrower's monthly payments and interacting with him or her directly through outbound telephone calls, in-bound telephone calls, correspondence and EMC's website, www.emcmortgagecorp.com.

18. EMC also maintains necessary accounts for consumers (including escrow accounts for taxes and insurance, if applicable) and makes the necessary disbursements (including remittance of principal and interest to investors and disbursements for taxes and insurance to the proper entities).

19. In its role as servicer of consumer mortgages, EMC must comply with the loan agreements governing consumers' mortgages.

20. EMC holds a position of trust and significance for consumers whose mortgage loans EMC services.

21. EMC owes a legal duty to consumers whose loans it services to account for and apply consumers' mortgage payments to reduce principal and pay interest properly and in a timely manner.

22. EMC also owes a legal duty to consumers to maintain and report properly and accurately on their mortgages to consumers' mortgage holders, the government, and consumer reporting agencies, the later of which determines consumers' credit ratings.

23. When EMC or other mortgage servicers breach their duties to consumers, they can and do materially affect consumers' employment, insurance rates, creditworthiness, and other very significant aspects of consumers' lives.

*EMC's Common Course of Conduct*

24. EMC must honor and abide by the terms of mortgage loan agreements of Plaintiff and other residential mortgagors in Kentucky and throughout the United States whose mortgages EMC services. These loan agreements commonly:

    a. Call for repayment of the money borrowed in periodic payments in monthly installment payment amounts, which, among other things, EMC in turn receives, processes and applies to borrowers' mortgage loan accounts;

    b. Specify when monthly mortgage payments are due and when they are late; and

    c. Provide that upon each mortgage payment, part of the money originally borrowed (the principal) is repaid (i.e.-reduced) plus accrued interest is paid on the declining

balance of the principal according to an amortization schedule over the life of the mortgage.

25. Pursuant to the terms of written loan agreements governing the mortgages of Plaintiff and other residential mortgagors in Kentucky and throughout the United States whose mortgages EMC services, EMC must account for and apply mortgagors' mortgage loan payments to reduce principal and pay interest on their mortgages properly and in a timely manner.

26. The failure to apply monthly mortgage loan payments to reduce principal and pay accrued interest on home mortgage loans of Plaintiff and other mortgagors in Kentucky and throughout the United States in accordance with the amortization schedules of their loans, can and does result in their owing and paying more in principal and accrued interest than called for under the terms of their mortgage loans.

27. From at least January 2001, until present, EMC has engaged in a widespread, common course of conduct, which has caused injury in fact and ascertainable loss to consumers, including Plaintiff and the Class.

28. EMC's injurious course of conduct has consisted of the following systemic corporate practices, which EMC regularly implemented and maintained through its authorized agents and employees:

   a. Making standardized mortgage-related representations to consumers, containing material false, misleading or unsubstantiated information relating to required payments, application of mortgage payments, or delinquencies or delinquency-related penalties on their mortgages, including the possibility of foreclosure;

6

b. Claiming, attempting, or making threats, including threats of foreclosure or collection actions against consumers, when EMC knew or should have known that its rights to do so were not legitimate;

c. Depriving consumers from the benefit of reduced principal and payment of interest under the amortization schedules applicable to their mortgage loans, by:

(a) Placing or suspending consumers' mortgage payments in accounts it creates or uses in a manner not called for under the terms of consumers' mortgage loans;

(b) Applying consumers' mortgage payments first to unauthorized accounts it creates, other than ones to reduce principal and pay interest, as called for under consumers' mortgages;

(c) Applying consumer mortgage payments to cover unwarranted delinquency-related fees or arrearage, rather than to the principal and interest; or,

(d) Failing to promptly or accurately post or credit consumers' mortgage payments to principal and interest, leading to the imposition of unwarranted delinquency-related fees, greater interest and principal being owed and paid over the life of their loans not in accordance with the terms thereof;

d. Asserting the existence of legal rights against consumers relating to their mortgage payments and delinquencies, when EMC knew or should have known that such rights did not exist or were not ripe for enforcement; and,

e. Willfully or intentionally engaging in the conduct described above.

29. EMC has and will continue to aggrieve consumers by the foregoing course of conduct, and EMC has and will continue to engage in the foregoing unlawful course of conduct, unless this Court issues an injunction preventing further violations of law.

## ALLEGATIONS RELATING TO CLASS PLAINTIFF

30. Plaintiff Katrina Eversole owns residential real estate at 644 Smugglers Notch Drive, Lexington, Kentucky, which is under a mortgage serviced by EMC. Ms. Eversole is a single mother, first-time homeowner, and has never been late with a mortgage payment.

31. In or about August 2004, Ms. Eversole entered a variable rate mortgage and promissory note with a lender called The CIT Group/Consumers Finance, Inc. ("CIT")

32. Under Ms. Eversole's mortgage and promissory note, her payments are due on the first of the month, and late if paid after the fifteenth of the month. The "Application of Payments" section of her promissory note states that payments will be applied to accrued interest before the unpaid principal balance, and states nothing about accounting for Ms. Eversole's payments in any other manner.

33. On or about January 8, 2005, Eversole received a notice from CIT that effective on or about January 1, 2005, EMC acquired servicing rights to Ms. Eversole's mortgage form CIT. However, CIT did not give her notice of the transfer to EMC, prior to January 1, 2005; and, in accordance with the terms of her mortgage and promissory note, Ms. Eversole mailed the January 2005 mortgage payment prior to its due date to CIT to the address she had for making mortgage payments.

34. However, shortly after January 1, 2005, Eversole started receiving a barrage of invasive prerecorded telephone messages from EMC, at work and home, requesting her to call a toll-free number. On many days she received two calls by EMC per day. EMC placed one such call at 8:00 AM on a Saturday and another at 7:00 AM on a Monday. EMC's hounding of Ms. Eversole lasted through mid-February 2005.

35. After the Saturday 8:00 AM call stated above, Ms. Eversole called EMC's toll-free number and an EMC representative informed her she was late on her mortgage payments and that EMC was going to foreclose because she did not make her January 2005 mortgage payment. Ms. Eversole tried to explain how and why she mailed her timely mortgage payment to her former servicer CIT which it received on January 3, 2005, but the EMC customer service agent maintained that a letter of foreclosure was being sent.

36. Since January 1, 2005, Ms. Eversole has telephoned and sent letters to EMC on several occasions to avoid its threatened foreclosure, adverse impact on her credit rating, or to explain how EMC has been misapplying her timely mortgage payments and depriving her of the benefit of reduced principal and payment of accrued interest.

37. In one instance, Ms. Eversole was told by an EMC representative that her February 2005 payment she timely sent to EMC was applied to the January 2005 payment that EMC claimed it did not receive, which had left her one month behind according to EMC.

38. In her February and March 2005 billing statements, EMC represented that Ms. Eversole was still a month behind, despite her timely payment and its receipt by CIT on January 3, 2005.

39. On EMC payment coupons she returns with monthly payments to EMC, Eversole regularly marks the box for additional principal payment of $3.44 each month. However, EMC has failed to apply these principal payments to reduce principal at the time the payments were made.

40. At the end of March 2005, EMC finally agreed to credit her account with her January 2005 payment, but did not make the posting retroactive to January 3, 2005 when it was received, as

9

Eversole had requested. This January 2005 payment was instead posted and accounted for in March 2005.

41. As a result of the foregoing, EMC caused the same injury to Eversole as that suffered by the Class set forth in ¶ 28 above:

    a. EMC has failed to reduce principal in January 2005 and at other times in accordance with her mortgage by the amount of on-time mortgage payments and additional principal payments, and more accrued interest is due because the amount of principal upon which it was calculated was greater than it should have been;

    b. EMC's conduct has resulted in principal not being timely reduced and accrued interest being calculated and owed by Eversole on a greater amount of principal than should be the case over the life of her mortgage;

    c. EMC has caused Ms. Eversole to owe more and to pay more than called for under her promissory note and mortgage, and deprived her of the benefit of timely reductions in principal and payment of interest under the terms of her mortgage;

    d. EMC made expressly or by implication standardized mortgage-related oral and written representations to Eversole, which contained material, false or misleading debt collection information relating to required payments, application of mortgage payments, or delinquencies or delinquency-related penalties;

    e. EMC claimed it was entitled to foreclosure, when EMC knew or should have known that foreclosure was not legitimate and it had no legal right to foreclose;

    f. The foregoing conduct on the part of EMC was not by mistake but was intentional, and could reasonably be expected to abuse or harass or injure Eversole.

42. Based on the foregoing course of conduct, EMC has clearly caused injury in fact and cognizable loss to Ms. Eversole and other consumers. EMC has and will continue to aggrieve Ms.

Eversole and the Class and EMC has and will continue to engage in the foregoing unlawful course of conduct, unless this Court issues an injunction preventing further violations of the law set forth below.

## **CLASS REPRESENTATION ALLEGATIONS**

43. Plaintiff seeks to represent a class of victims (the "Class" or "Class Members") against Defendant EMC, defined as follows:

> Since January 2001, all individuals (1) who have given mortgages on residential property located in Kentucky (2) whose mortgage loan accounts relating to such property EMC has serviced and (3) whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments to reduce principal and pay interest in accordance with the terms of their mortgage loans.

To be excluded from the Class are persons employed by or otherwise related to EMC, or its subsidiaries, their successors, or affiliates. Also to be excluded from the Class are any and all members of the federal judiciary.

### Rule 23 Allegations

44. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this action may be maintained as a class action because all procedural elements are satisfied as set forth below:

#### 1. Numerosity

45. The Class consists of thousands of consumers who have been aggrieved and suffered losses through EMC's common course of conduct in servicing their mortgages, although the exact number of Class Members is within the exclusive knowledge of EMC and is readily discoverable from EMC.

46. Class Members are geographically diverse as they reside in different locations around Kentucky. The size of their individual claims will likely not exceed a few hundred dollars. Under such circumstances, this action promotes judicial economy and avoids inconvenience of Class Members who would otherwise be forced to litigate their relatively small claims in separate actions.

47. Accordingly, the Class is so numerous that it would be impractical to join all of the members of the Class within the meaning of Rule 23(a)(1).

### 2. Commonality

48. On behalf of the Class, the representative Plaintiff brings claims which raise questions of law or fact common to all members of the Class, as contemplated by Rule 23(a)(2). Common factual or legal questions include:

a. Whether EMC engaged in a common course of conduct;

b. Whether EMC routinely represented to Plaintiff and members of the Class that Plaintiff and members of the Class were delinquent in their mortgage payments, when such was not the case;

c. Whether EMC routinely failed to apply Plaintiff and Class Members' timely mortgage payments accurately to reduce principal and pay interest;

d. Whether EMC breached Class Members' mortgage agreements by its common course of conduct;

e. Whether EMC violated §367.110 *et seq.*, by its common course of conduct;

f. Whether Plaintiff and the Class Members have sustained ascertainable loss as well as the measure of such loss in monetary terms; and,

g. Whether Plaintiff and Class Members are aggrieved and thus entitled to injunctive and/or declaratory relief.

### 3. Typicality

49. In accordance with the requirements of Rule 23(a)(3), the representative Plaintiff's claims are typical of the claims of all other members of the Class, and the representative Plaintiff has no interests which are adverse or antagonistic to the interests of the Class. The representative Plaintiff's claims are typical of the claims of the Class, in that: Plaintiff shares the claims underlying the common questions set forth in the preceding paragraph; and Plaintiff has suffered the injuries EMC caused Plaintiff and the Class set forth above in ¶¶ 24-42.

### 4. Adequacy

50. In accordance with the requirements of Rule 23(a)(4), the representative Plaintiff and her counsel will fairly and adequately represent and protect the interests of each member of the Class. The representative Plaintiff and the Class share common interests which are not adverse, and the representative Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class action litigation.

### Rule 23(b)(2) Certification of Injunctive Class

51. By and through its common course of conduct, EMC has acted on grounds generally applicable to the Class, thereby making permanent injunctive and declaratory relief on behalf of the entire Class appropriate, issued on grounds generally applicable to the entire Class.

### Rule 23(b)(3) Allegations

52. The questions of fact or law common to the claims of each member of the Class, relating to EMC's common course of conduct, set forth above, predominate over any facts affecting only individual members of the Class.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Class Members will continue to be injured by Defendant's violations of Kentucky law. The violations of law by Defendant will proceed without remedy while Defendant continues to ignore its legal obligations under the law, and individuals will be left unaware of the violation of their rights on a daily basis.

54. Most individual Class Members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, injuries suffered by individual Class Members.

55. This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

56. This action presents no difficulty that would impede its management by the Court as a class action. When the liability of Defendant has been adjudicated, the damages of each Class Member can be administratively determined from Defendant's files.

## FIRST CAUSE OF ACTION
### (Violation of Consumer Protection Act)

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 56 above as if fully set forth herein.

58. EMC has a statutory duty pursuant to the Kentucky Consumer Protection Act, KRS § 367.110 *et seq.*, not to engage in unfair, false, misleading, or deceptive acts in the conduct of any trade or commerce.

59. EMC, by engaging in the common course of conduct described in ¶¶ 24-42, has violated the Kentucky Consumer Protection Act, KRS § 367.170, in that such conduct constitutes unfair, false, misleading, or deceptive acts in the conduct of any trade or commerce.

60. Plaintiff and Class Members have mortgages which are primarily for personal, family, or household purposes; and EMC's common course of conduct toward Plaintiff and Class Members has caused them to suffer ascertainable loss of money and property interests.

61. By reason of the foregoing, Plaintiff and Class Members have been damaged and are entitled to an award of compensatory damages in an amount to be determined at the trial of this matter. In addition thereto, Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs incurred in bringing this action.

62. The Kentucky Consumer Protection Act also authorizes the award of equitable relief, including injunctive relief and disgorgement, which Plaintiff on behalf of herself and the Class prays for below.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

63. Plaintiff realleges and incorporates by this reference the allegations set forth in paragraphs 1-56, as though fully set forth herein.

64. EMC has breached the loan agreements governing the mortgages of Plaintiff and likewise with Class Members, by routinely:

a. Failing to promptly or accurately post or credit timely mortgage payments to principal and interest under the terms of the agreements;

b. Causing the imposition of unwarranted delinquency-related penalties, or greater interest and principal being owed over the life of agreements, than should otherwise be the case under the agreement terms;

c. Depriving Plaintiff and the Class from the benefit of reduced principal and payment of accrued interest under the amortization schedules applicable to their agreements; and,

d. Asserting the existence of legal rights against consumers relating to their mortgage payments, when EMC knew or should have known that such rights did not exist under the terms of the agreements.

65. EMC's conduct caused Plaintiff and Class Members to suffer damages.

66. All the conditions precedent for the filing of this action have been satisfied or otherwise waived.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

67. Plaintiff repeats and realleges the allegations contained in paragraphs 1-56 above, as if fully set forth herein.

68. Plaintiff and Class Members do not have an adequate remedy at law.

69. This is an action for equitable relief in the form of unjust enrichment, in the alternative to breach of contract, given that EMC engages in conduct, which is inequitable and not contemplated by Plaintiff and Class Members' mortgages.

70. Plaintiff and Class Members have conferred substantial benefits upon EMC and its investor clients in the form of payment of unwarranted amounts and increased indebtedness or obligations beyond the terms of Plaintiff and Class Members' mortgages. Defendant has knowledge of the benefits conferred upon it and its investors by Plaintiff and Class Members, and Defendant has voluntarily accepted and retained the benefits conferred upon it and its investors by Plaintiff and Class Members.

71. Under the circumstances brought about by Defendant's course of conduct set forth above in ¶¶ 24-42, it would be inequitable for Defendant to retain these substantial benefits. As a direct and proximate result of EMC's unlawful course of conduct and its inequitable retention of the benefits conferred upon it and its investors by Plaintiff and Class Members, Plaintiff and Class Members have suffered damages, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Money Had and Received)

72. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 56 above, as if fully set forth herein.

73. Plaintiff and Class Members do not have an adequate remedy at law.

74.     This is an action for equitable relief in the form of money had and received, in the alternative to breach of contract, given that EMC engages in conduct, which is inequitable and not contemplated by Plaintiff and Class Members' mortgages.

75.     EMC received monies from Plaintiff and Class Members for the payment of amounts in connection with their home mortgages. This money was received by EMC for use to reduce principal and pay interest due thereon.

76.     However, by its inequitable common course of conduct, EMC improperly allocated money received or imposed additional funds from Plaintiff and Class Members for the payment of amounts improperly assessed or applied by EMC, and deprived Plaintiff and the Class of benefits due them consisting of reductions in principal owed and payment of accrued interest. EMC did so with superior knowledge concerning the true sums owed under the mortgage agreements by Plaintiff and Class Members. Moreover, EMC took advantage of its superior position and misrepresented delinquencies to Plaintiff and the Class beyond that contemplated by Plaintiff and Class Members' mortgages.

77.     EMC is indebted to Plaintiff and Class Members for all such unwarranted amounts assessed and benefits from which they have been deprived.

78.     By reason of the foregoing, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

79.     Plaintiff realleges and incorporates by this reference the allegations set forth in paragraphs 1-56 above, as though fully set forth herein.

80.     Plaintiff, on behalf of herself and all Class Members, seek a judgment declaring Defendant's conduct unlawful, and that Defendant must cease the course of conduct described above

and providing for adequate procedures and policies for the immediate and complete refund of illegal and unwarranted amounts assessed or attributable to EMC's failure to reduce principal and pay interest on Plaintiff and Class Members' mortgage-related indebtedness.

81. Plaintiff and Class Members do not have a plain, adequate, speedy or complete remedy at law to address the wrongs alleged in this First Amended Class Action Complaint and will suffer irreparable injury as a result of Defendant's misconduct unless injunctive or declaratory relief is granted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Defendant, as follows:

(a)  Certify this action as a class action and designate Plaintiff as the representative thereof;

(b)  Award Plaintiff and members of the Class damages attributable to Defendant's failure to promptly or accurately credit the individuals' mortgage loan accounts with timely mortgage payments to reduce principal and pay interest;

(c)  Award Plaintiff all attorneys' fees, and the costs and expenses incurred in this action;

(d)  Temporarily or permanently enjoining Defendant from continuing to engage in the course of conduct set forth in ¶¶ 24-42 above, and requiring it to implement procedures to avoid such conduct in the future;

(e)  Temporarily or permanently enjoining Defendant to adopt adequate procedures and policies for the immediate and complete refund of illegal and unwarranted amounts assessed on Plaintiff and Class Members' mortgages;

(f)  Otherwise awarding Plaintiff and Class Members declaratory and injunctive relief as permitted by law or equity, and awarding such relief as the Court finds necessary to redress injury

to Plaintiff and similarly situated consumers resulting from Defendant's course of conduct, including, but not limited to, declaring Defendant to be in violation of Class Members' mortgage agreements, refund of monies, restitution, and the disgorgement of ill-gotten gains and of all monies (plus interest thereon at the legal rate) acquired by means of any act or practice declared by this Court to be in breach of contract, tortious or unlawful; and

    (g)    Grant such other and further relief as may be appropriate under the circumstances.

### Trial by Jury

Plaintiff demands trial by jury of all issues so triable in this action.

JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.

_/s/ John A. Yanchunis_
John A. Yanchunis
Florida Bar No. 324681
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609
(813)286-4100
Fax(813)286-4174

Mark Fistos
Florida Bar No.: 0909191
3301 Thomasville Rd. A200
Tallahassee, FL 32308
(850)325-2680
Fax(850)325-2681

Steven Jaffe
**ARONOVITZ TRIAL LAWYERS**
Suite 2700 * Museum Tower
150 West Flagler Street
Miami, Florida 33130
(305) 372-2772
Fax (305) 375-0243

Robert R. Sparks
**PARRY DEERING FUTSCHER
& SPARKS, P.S.C.**
411 Garrard Street

19

                                                              Covington, Kentucky 41011
                                                              (859) 291-9000
                                                              Fax (859) 291-9300

                                                             Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2005, I caused to be served via facsimile and email attachment (PDF format) a true and correct copy of Plaintiff's First Amended Class Action Complaint, upon the below-listed persons.

                                                             Mark S. Fistos

David S. Kaplan
**FROST BROWN TODD LLC**
400 W. Market Street, 32nd Floor
Louisville, KY 40202-3363
502-589-5400
502-581-1087 (Fax)

Regina J. McClendon
**SERVERSON & WERSON**
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
415-677-5602
415-956-0439 (Fax)

Counsel for Defendant