UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

**Electronically Filed**

| | |
|---|---|
| KATRINA EVERSOLE, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 05-124-KSF |
| ) | |
| EMC MORTGAGE CORPORATION, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST EX PARTE CONTACTS WITH DEFENDANT'S CURRENT EMPLOYEES AND AGAINST MISLEADING ADVERTISING

Pursuant to Federal Rules of Civil Procedure 23(d) and 63, defendant EMC Mortgage Corporation ("EMC") moves for a preliminary injunction restraining plaintiff Katrina Eversole's lawyers, their investigators and others acting in concert with them from (a) disseminating by television, Internet or other means misleading or disparaging advertising about EMC, and (b) contacting or attempting to contact EMC's current employees about the subject matter of this lawsuit without the consent or participation of EMC's counsel. The grounds for this motion are more fully set forth in the accompanying memorandum of law. A suggested preliminary injunction is tendered herewith.

Respectfully submitted,

Thomas P. O'Brien III
FROST BROWN TODD LLC
400 West Market Street
32nd Floor
Louisville, Kentucky 40202
(502) 589-5400
tobrien@fbtlaw.com

and

John B. Sullivan
Regina J. McClendon
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, 26th Floor
San Francisco, California 94111
(415) 398-3344
rjm@severson.com


By: /s/ Regina J. McClendon
    COUNSEL FOR DEFENDANT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

**Electronically Filed**

| | |
|---|---|
| KATRINA EVERSOLE, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 05-124-KSF |
| ) | |
| EMC MORTGAGE CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION
AGAINST EX PARTE CONTACTS WITH DEFENDANT'S CURRENT EMPLOYEES
AND AGAINST MISLEADING ADVERTISING**

**INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 23(d) and 63, defendant EMC Mortgage Corporation ("EMC") moves for a preliminary injunction restraining plaintiff Katrina Eversole's lawyers, their investigators and others acting in concert with them from (a) disseminating by television, Internet or other means misleading or disparaging advertising about EMC, and (b) contacting or attempting to contact EMC's current employees about the subject matter of this lawsuit without the consent or participation of EMC's counsel.

Eversole's counsel, the firm of James, Hoyer, Newcomer & Smiljanich, has recently produced a 30-second advertisement. The advertisement has aired on CNN in the Dallas, Texas area and has been posted on the Internet. The ad begins by displaying the title "Actual Customer Complaints," while women's voices say: "It's been a nightmare. It really has;" "I couldn't get the house refinanced so I lost my home;" "They kept overcharging me. I received bill after bill

that was always incorrect;" and "I just couldn't understand why they kept calling." While the screen shows the captions "Mishandled Payments," "Harassing Phone Calls," and "Threatened Foreclosures," a male voice states: "Customers say EMC Mortgage Corporation mishandled their monthly payments, made harassing phone calls and threatened them with foreclosure." The ad concludes by soliciting former EMC employees to contact plaintiff's attorneys to "help us with this investigation." McClendon Aff., ¶ 5.

In addition, James Hoyer's investigators have attempted to contact EMC's employees, past and present, to pump them for information they hope will substantiate the charges so freely made, but thus far unsupported, in this lawsuit. One James Hoyer investigator went so far as to e-mail a second grade teacher at her work, asking her to have her husband, one of EMC's current managerial employees, contact the investigator "for more advice on EMC." Fawley Aff., ¶ 2; Ex. A to Fawley Aff. In addition, Mr. Fawley received a call at home from an investigator affiliated with the James Hoyer firm. Fawley Aff., ¶ 3.

The Court should bring this extraordinary campaign to an abrupt halt. Lawsuits should be litigated in court, not on the airways. Plaintiff's attorneys' advertisement unfairly disparages EMC, harming its business relations with borrowers and others. Plaintiff's attorneys' attempted contact with a current EMC employee violates Kentucky Rules of Professional Conduct.

James Hoyer's campaign is totally uncalled for, particularly at this stage of the litigation. Eversole's class certification motion has already been taken under submission. The "investigation" comes too late to be of any use in supporting that motion. No wide-ranging "investigation" is needed to resolve Eversole's individual claim, which is all that will remain if the motion is denied. There is no reason to allow Eversole's attorneys to proceed with their disruptive campaign now.

The Court should stop that campaign by enjoining Eversole's attorneys and investigators from disseminating misleading or disparaging advertising about EMC and from contacting or attempting to contact EMC's current employees except with EMC's counsel's consent or by means of formal discovery.

## STATEMENT OF FACTS

### A. Eversole's Individual Facts

The sole named plaintiff in this case, Katrina Eversole, obtained a loan from The CIT Group/Consumers Finance, Inc. ("CIT"), secured by a mortgage on her Lexington, Kentucky home. 1st Amended Compl., ¶¶30, 31. CIT transferred servicing rights in Eversole's loan to EMC in January 2005. *Id.*, ¶33. CIT agreed to forward to EMC any payment it received on Eversole's loan within a day of its receipt of the payment. Dillard Depo., 64:1-65:2, 71:3-8.[1]

CIT did not promptly forward Eversole's January 2005 payment to EMC. Dillard Depo., 71:21-23. In late January and February 2005, EMC called Eversole regarding what it believed was her missed January payment; Eversole explained that she had paid CIT on time. 1st Amended Compl., ¶¶34-36; Eversole Depo., 57:18-58:4, 70:23-79:12.[2]

Still not having received Eversole's January payment from CIT, EMC applied her February payment to the January installment. 1st Amended Compl., ¶37. EMC finally received Eversole's January 2005 payment from CIT on March 4, 2005 and posted it to Eversole's account as of that date. Dillard Depo., 71:21-23.

Each month, Eversole paid an additional $3.44 on her mortgage, sending a check for $660 rather than the $656.56 then due. Eversole Depo., 69:13-70:22. Though Eversole checked a box indicating this sum should be applied as an additional principal payment, EMC did not

---

[1] The deposition transcript of Dana Dillard was previously filed with this Court under seal. Dkt. No. 60.
[2] Excerpts of the Katrina Eversole deposition transcript are attached as Exhibit A to the McClendon Affidavit that accompanies this motion.

initially credit that amount to principal because it thought she was one payment behind. When EMC did receive Eversole's January payment from CIT in March 2005, EMC credited her extra $3.44 amounts to principal. EMC later restated Eversole's loan account, crediting each payment on the date received and crediting each extra $3.44 to principal as of that date. 9/27/06 Dillard Aff., ¶11.[3] As a result of this restatement of the account, Eversole's loan balance was reduced by twelve cents (12¢). *Id.* at ¶ 12.

EMC transferred servicing of Eversole's loan back to CIT on July 1, 2005. Eversole Depo., 54:16-55:3; 9/27/06 Dillard Aff., ¶15.

During the approximately six months EMC serviced her loan, Eversole did not pay any fees for late payment, property preservation, property inspection, appraisal, foreclosure, insurance or servicing. Eversole Depo., 137:15-16, 145:1-6, 146:6-24; 9/27/06 Dillard Aff., ¶¶17-19. While EMC serviced her loan, Eversole did not have any escrow account for paying property taxes or hazard insurance premiums. Eversole Depo., 140:6-15; 9/27/06 Dillard Aff., ¶19. Eversole does not claim that EMC ever reported her credit adversely or incorrectly to a credit bureau. Eversole Depo., 146:25-151:14, 169:2-21.

### B. Class Action Allegations

Eversole purports to bring this action on behalf of a class of all Kentucky borrowers whose mortgage loans EMC has serviced since January 2001 and "whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments to reduce principal and pay interest in accordance with the terms of their mortgage loans." 1st Amended Compl., ¶43.

On the class' behalf, Eversole alleges that EMC "has engaged in a widespread, common course of conduct" including "the following systemic corporate practices": (a) misrepresenting

---

[3] The Affidavit of Dana Dillard in Opposition to Plaintiff's Motion for Class Certification was filed under seal on September 27, 2006. Dkt. No. 49.

information about payments due, application of payments, delinquencies, and remedies for delinquencies, (b) threatening foreclosure or other collection actions and asserting purported legal rights when EMC knew it had no right to invoke those remedies, (c) misapplying payments by placing them in suspense or other unauthorized accounts, by applying payments to cover unwarranted delinquency-related fees or arrearages, and by failing to post payments promptly and accurately. 1st Amended Compl., ¶28.

### C. Progress Of Suit

Eversole's lawyers filed this case on April 1, 2005. Dkt. No. 1. They filed an amended complaint on May 26, 2005. Dkt. No. 10.

On August 8, 2005, the Court granted EMC's motion for a protective order against discovery that Eversole's lawyers had propounded prematurely before the parties' "meet and confer" conference under Fed. R. Civ. P. 26. Dkt. No. 20, p. 3. The same order also granted EMC's motion to stay discovery until after the Court's decision on EMC's then-pending motion to dismiss. *Id.*, p. 4.

On November 9, 2005, the Court granted EMC's motion to dismiss as to Eversole's first cause of action under the Kentucky Consumer Protection Act and denied the motion as the Eversole's other claims. Dkt. No. 21. EMC answered the remaining claims at the end of November 2005. Dkt. No. 22.

On March 15, 2006, the Court entered its Scheduling Order, setting August 26, 2006 as the last day for Eversole to file a motion for class certification and setting a briefing schedule for that motion. Dkt. No. 30. On August 28, 2006, Eversole's attorneys filed a motion for leave to file the class certification motion under seal. Dkt. No. 43. On September 25, 2006, they filed the motion itself. Dkt. No. 46. Two days later, EMC's opposition to the motion was filed. Dkt.

Nos. 47, 49. Eversole's reply was filed on October 12. Dkt. Nos. 51, 53. The class certification motion was submitted to chambers for review on October 13.

Meanwhile, Eversole's lawyers pursued discovery from EMC and subpoenaed additional documents from Accenture, a consulting company, and from The Bear Stearns Companies, Inc., EMC's parent. EMC's objection to the Accenture subpoena was sustained in part and overruled in part on July 2, 2006. Dkt. No. 32. After a telephone conference with the Magistrate Judge, the parties were able to resolve EMC's objections to the Bear Stearns subpoena. See Dkt. No. 36.

### D. Eversole's Lawyers And Their Website

James Hoyer ("James Hoyer") is the first of the three law firms listed as Eversole's attorneys in this suit. It has taken the lead in prosecuting this action on Eversole's behalf. McClendon Aff., ¶2.

According to the James Hoyer website, the firm distinguishes itself as an "investigative law firm":

> James, Hoyer is an investigative law firm. We believe that getting control of the facts is the best game plan for success. Unlike other law firms, we have the staff and the experience to deliver on this vision. The firm's eight full-time investigators give our cases unparalleled authority. Our teams of former prosecutors, former FBI agents and former investigative journalists unravel our clients' problems in cases across the U.S. and around the globe.

<http://www.jameshoyer.com/>; McClendon Aff., ¶4.

Currently topping the home page of the James Hoyer website is the legend: "EMC Reponses see below." Below are two choices: "Click here to send an EMC response," and "Click here to see EMC Customer Testimonials." McClendon Aff., ¶4; Ex. B to McClendon Aff. Clicking on the first choice leads to a web page bearing a form for making an "EMC response" below the following text:

> EMC Mortgage Corporation Complaints
>
> Is your mortgage serviced by EMC Mortgage Corporation? We are reviewing allegations that numerous EMC customers didn't get credit for payments made, got billed for insurance they didn't need, and were unjustifiably threatened with foreclosure. Click here for a no-cost consultation with one of our attorneys about your experience with EMC Mortgage Corporation.
>
> Some EMC customers are complaining about extra charges on their bills even though they paid on time. The extra charges can lead to threats of foreclosure and negative entries on credit reports. Consumers have also complained that EMC failed to properly credit them for payments made, and that EMC charged them for insurance they didn't need.
>
> Headquartered in Irving, Texas, EMC specializes in servicing the mortgages of people with imperfect credit.
>
> If you are a former EMC Mortgage Corporation employee with knowledge of consumer complaints, or if you are a EMC customer who has experienced problems, fill out the form below to review your dealings with EMC with one of our attorneys. Our law firm, headquartered in Tampa, fights fraud on behalf of consumers across the country.

<http://www.jameshoyer.com/problem_emc_mortgage.html#form>; McClendon Aff., ¶4; Ex. C to McClendon Aff.

Clicking on the other choice, "Click here to see EMC Customer Testimonials," leads to a computer version of the advertisement described below. McClendon Aff., ¶4.

E. **The Advertisement**

Eversole's lawyers have prepared a 30 second commercial. They have run the advertisement on CNN in the Dallas, Texas area. Fedler Aff., ¶2. Computerized versions have also been posted on the James Hoyer website and the Mortgage Servicing Fraud Forum website. McClendon Aff., ¶5. A description of the commercial is set forth in the Introduction, above. The commercial solicits former EMC employees to contact the James Hoyer firm.

### F.  Ex Parte Contacts With EMC Employees

In addition to trolling for disaffected ex-employees of EMC by the just-mentioned advertisement, the James Hoyer firm has attempted to contact at least one current EMC employee, Ty Fawley, who is a managerial employee.

The lengths to which the James Hoyer firm has gone in this endeavor are shown by the following e-mail, sent to Ty Fawley's wife at her work e-mail address at the Sigler Elementary School:

> Stacey Fawley
> Second Grade Team Leader
> Sigler Elementary
> 469-752-3239
> stacey.fawley@pisd.edu
>
> \>\>\> "Lenny Savino" <lsavino@jameshoyer.com> 10/24/2006 11:08 AM \>\>\>
>
> Mrs. Fawley,
>
> Could you please ask your husband Ty to call me? I spoke with a former colleague of his at EMC Mortgage - Kevin Parker - and he suggested I contact Ty for more advice on EMC. Kevin told me your first name, which is how I found your email. Please excuse me for reaching you at work.
>
> Respectfully,
>
> Len Savino
> James, Hoyer, Newcomer & Smiljanich
> One Urban Centre, Suite 550
> 4830 West Kennedy Boulevard
> Tampa, FL 33609
> (813) 286-4214 Office
> Toll Free: 1-800-634-0877

Fawley Aff., ¶2; Ex. A to Fawley Aff.  A James Hoyer investigator also telephoned Mr. Fawley at hom. *Id.* at. ¶3.

After Ms. Fawley forwarded this unwelcome e-mail to her husband, EMC's attorneys e-mailed and wrote the James Hoyer firm demanding that it cease its ex parte contacts with EMC's employees. McClendon Aff., ¶6 & Ex D. The James Hoyer firm first denied that they were contacting EMC's employees, e-mailing the following message: "Someone has misinformed you. Lenny Savino hasn't knowingly contacted current EMC employees, and has conducted no interviews thereof." *Id.*, ¶7 & Ex. E. It then dropped that pose and attempted bravado instead, writing:

> You are correct that our firm continues to investigate EMC and its business practices, and that we have reached out to find former employees. However, we are not "soliciting" anyone as your letter suggests, as that phraseology suggests unlawful or unethical behavior on our part. You may not have intended such meaning, but it is important to be clear as to what's going on: EMC refused to answer our discovery on former employees and third parties possessing relevant facts, and we have been forced to investigate those matters on our own. Just now, I've put in place a process to copy and send you our TV spot and web materials that have run.
> …

*Id.*, ¶8 & Ex. F.

## ARGUMENT

### A.  James Hoyer's Disparaging Advertisement Should Be Halted

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Under Fed. R. Civ. P. 23(d), the Court is granted broad authority to enter appropriate orders to govern the course of proceedings in a class action and provide for the fair conduct of the action.

Further, the Supreme Court has recognized that "[l]awyers representing clients in pending cases are key participants in the [civil] justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct." *Gentile v.*

*State Bar of Nevada*, 501 U.S. 1030, 1074 (1991). In particular, states and the federal government are "free to prevent the dissemination of commercial speech [including attorney advertising] that is false, deceptive, or misleading ...." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 471 U.S. 626, 638, 652-53 (1985); see *Florida Bar v. Pape*, 918 So.2d 240, 246-49 (Fla. 2005).

Of course, the Court does not exercise unlimited discretion to limit the speech of lawyers trying class action cases before it. *Gulf Oil Co.*, 452 U.S. at 100. Any order entered restricting counsel's speech about a class action "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. In addition, any order should be carefully drawn to limit speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.

Those limitations do not mean the Court must or should permit a party's attorney engage in widespread publicity that is harmful to the opposing party, particularly when limiting the derogatory publicity will not seriously interfere with proper preparation of the case for trial. For example, in *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997), the Eleventh Circuit held that the district court had abused its discretion in allowing the plaintiffs, who alleged Motel 6 discriminated against African-American customers and employees, to "advertise their claims nationwide and conduct mass mailings to Motel 6 employees." *Id.* at 1003. In the Eleventh Circuit's words:

> An order authorizing class communications prior to class certification is likely to be an abuse of discretion when (1) the communication authorized by the order is widespread and clearly injurious and (2) a certification decision is not imminent or it is unlikely that a class will in fact be certified. In such circumstances, the danger of abuse that always attends class communications—the possibility that plaintiffs might use widespread publication of their claims, disguised as class

> communications, to coerce defendants into settlement-is not outweighed by any need for immediate communications.

*Id.* at 1004.

Here, James Hoyer's advertising is, at least ostensibly, aimed at former employees rather than at putative class members, but the same principles apply. Just as the Eleventh Circuit found in *Jackson*, so, too, in this case, the advertising is "causing serious and irreparable harm to [EMC's] reputation and to its relationship with its employees" and borrowers. *Id.*

The advertisement disparage EMC as overcharging borrowers, mishandling their payments, making harassing phone calls to them, and threatening them improperly with foreclosure. Far from presenting these charges neutrally as one side's assertions that are as yet unsubstantiated and are hotly contested by EMC, the advertisement attempts to give them a greater air of authenticity by labeling them "Actual Consumer Complaints." To make matters worse, the advertisement has been posted to The Mortgage Servicing Fraud Forum increasing both its audience and strengthening the false impression that EMC already stands convicted of serious wrongdoing.

Already, EMC is beginning to experience the deleterious consequences of this unwarranted public disparagement. In the short interval since the advertisement began appearing on TV, at least one borrower has called EMC and, referencing the advertisement specifically, has demanded that EMC agree to reduce the interest rate on his loan. Fedler Aff., ¶3. Another customer, also citing the commercial, demanded a waiver of late fees. *Id.* EMC is likely to suffer similar and increasing harm from the advertisements as Eversole's lawyers repeatedly air it before the general public and make it available on the Internet. In short, like the advertisements in *Jackson*, James Hoyer's ad is both widespread and clearly injurious.

Moreover, as in *Jackson*, plaintiff has no pressing need to engage in this type of injurious communication. Eversole's class certification motion has already been submitted to the Court for its review and ruling. No evidence garnered from James Hoyer's trolling for disaffected former EMC employees can now impact the Court's decision on class certification. The time for submitting evidence on that motion has come and gone.

If the class certification motion is denied, Eversole will have no need of ex-employee testimony to resolve her own claim which involves, at most, a few payments on a single loan and telephone calls made during a period of less than a month's duration. If a class is certified, Eversole will have time to obtain evidence by the normal means of court-regulated discovery. No trial date has yet been scheduled in this case. So there is no need to pursue unorthodox, unregulated and harmful means of securing that information now.

Bad enough on its own, the advertisement is made even worse by James Hoyer's motivation for producing and airing it. As James Hoyer's letter makes clear, the advertisement's purpose is to punish EMC for its perfectly proper objections to Eversole's discovery in this case and to circumvent the Court's control over the discovery process. The Federal Rules provide Eversole ample means to overcome EMC's objections, if the Court determines they are improper.

But James Hoyer does not trust or is too impatient to await the Court-regulated process of discovery. Since "EMC refused to answer [i.e., objected to] our discovery on former employees and third parties possessing relevant facts," James Hoyer wrote, "we have been forced to investigate these matters on our own." That is a remarkable proposition indeed. One can only imagine the situation if every litigant took to the airways and the Internet every time his or her opponent had the temerity to object to interrogatories or document requests.

The Court should exercise its discretion and power under Fed. R. Civ. P. 23(d) to control the procedure in this case, to focus the litigation in the judicial forum where it belongs, and to prevent harm to EMC from James Hoyer's continuing to disseminate misleading and disparaging advertising about EMC. It should grant this motion and enter the proposed preliminary injunction against further distribution of such advertising.

### B. James Hoyer Should Be Restrained From Contacting EMC Employees

The Court should also restrain Eversole's lawyers and their investigators from their campaign of contacting EMC's employees. While they say they are trying to contact only former EMC employees, in fact, their campaign—whether intentionally or negligently—has spread much more widely to encompass at least one attempted contact with a current EMC managerial employee.

An attorney may "not communicate about the subject of the [attorney's] representation [of a client] with a party the lawyer knows to be represented by another lawyer in the matter." Ky. Supreme Ct. Rule 3.130(4.2).[4] In the case of corporate parties, the rule forbids a lawyer from communicating, ex parte, "with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." *Id.*, cmt. ¶2.

Violations of this rule barring ex parte contacts with represented parties are severely punished. Plaintiff's attorneys who had improperly interviewed and obtained statements from the defendant's managerial employees have been disqualified and the evidence they improperly obtained has been suppressed. *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514, 515-16 (Ky. 1994).

---

[4] Attorneys practicing before this Court are bound to obey the Kentucky Supreme Court's rules of professional conduct. Ky. Jt. Local Rule 83.3(c).

Federal courts take equally stiff measures to combat ex parte communications with represented parties and their employees. *See, e.g., Hammond v. City of Junction City,* 2000 WL 169370 (D. Kan. 2002).

There is no need to wait until a rules violation occurs to redress the problem. In this case, James Hoyer's investigator has already attempted to contact one of EMC's current managerial employees, Ty Fawley. Even if the investigator did not know Fawley was a current managerial employee, the attempted contact shows that James Hoyer's campaign of contacting EMC employees is not supervised carefully enough to avoid ex parte contacts that violate applicable rules of ethics. The possibility for abuse and violation of the rules is apparent. It would have ripened into a full violation if Fawley had called the James Hoyer investigator as requested.

These unethical contacts should be stopped now, while they are merely threatened, not later after they have occurred. Suppressing evidence and disqualifying counsel later would have more drastic consequences for Eversole and her attorneys while at the same time affording EMC less effective relief.

For the reasons already explained, a ban on contacting EMC employees will not keep Eversole from obtaining evidence she needs at this stage of the litigation. James Hoyer's ex parte contacts cannot be used to support Eversole's class certification motion as it is fully briefed and already submitted to the Court for decision. If the motion is denied, no information gleaned from contacts with EMC employees, past or present, will be needed to resolve Eversole's individual claim. If a class is certified, the Court can then address and appropriately regulate contacts between Eversole's attorneys and EMC employees.

## CONCLUSION

For the reasons stated above, the Court should grant the requested preliminary injunction restraining Eversole, her attorneys, their investigators and all other persons acting in concert with

them from (a) disseminating by television, Internet or other means misleading or disparaging advertising about EMC, and (b) contacting or attempting to contact EMC's current employees about the subject matter of this lawsuit without the consent or participation of EMC's counsel.

        Respectfully submitted,

        Thomas P. O'Brien III
        FROST BROWN TODD LLC
        400 West Market Street
        32nd Floor
        Louisville, Kentucky 40202
        (502) 589-5400
        tobrien@fbtlaw.com

        and

        John B. Sullivan
        Regina J. McClendon
        SEVERSON & WERSON
        A Professional Corporation
        One Embarcadero Center, 26th Floor
        San Francisco, California 94111
        (415) 398-3344
        rjm@severson.com

        By: /s/ Regina J. McClendon
            COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

    I hereby certify that on November 15, 2006, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Robert R. Sparks, Mark Fistos, and Steven Jaffe. I further certify that I sent the foregoing document by U.S. mail to the following non-CM/ECF participants:

John A. Yanchunis
James, Hoyer, Newcomer & Smiljanich, P.A.
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609

                                          By: s/ Regina J. McClendon
                                               COUNSEL FOR DEFENDANT