UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 05-124-KSF

KATRINA EVERSOLE, et al.                                              PLAINTIFF

vs.                              **OPINION AND ORDER**

EMC MORTGAGE CORPORATION                                   DEFENDANT

* * * * * * * *

This matter is before the Court on Plaintiff's Motion for Class Certification [DE #46]; Plaintiff's Motion to Compel [DE #35]; Plaintiff's Objections to Order [DE #77]; Defendant's Motion to Strike Scudieri Affidavit [DE #54]; and Defendant's Motion for Preliminary Injunction [DE #62]. These matters, having been fully briefed, are ripe for consideration.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Katrina Eversole ("Eversole") obtained a loan in August 2004 from The CIT Group/ Consumers Finance, Inc. ("CIT"), providing a promissory note and mortgage on her home.  CIT transferred servicing rights on the loan to EMC Mortgage Corporation ("EMC") in January 2005. CIT was to notify Eversole to make future payments to EMC and was to forward to EMC within a day of receipt any payment it received on Eversole's loan.

Eversole timely made her January 2005 mortgage payment to CIT before she received notice that the payment was to be made to EMC.  CIT did not promptly forward her payment to EMC.  When EMC called Eversole regarding the missed January payment, Eversole explained that she paid CIT on time.

When EMC received Eversole's February payment, it applied that payment to the still missing January installment.  CIT finally sent Eversole's January payment to EMC on March 4, 2005, and it was credited to her account as of the date of receipt.

Eversole paid an additional $3.44 each month on her mortgage with a request that the additional amount should be applied to principal. Because Eversole's January payment was not received by EMC in January, the loan was considered in default, and all extra payments were held in a suspense account until the loan was brought current or a sufficient sum was accumulated to equal the overdue payment. Accordingly, Eversole's additional $3.44 payments were not applied to principal until March 2005 when her January payment was received from CIT. Thereafter, the $3.44 was credited to principal for January and February and for all later payments EMC received.

On April 28, April 30, and May 2, 2005, EMC restated Eversole's account to reflect that the payments were timely made and to credit the additional payments made to principal. The result of this restatement of the account was to reduce Eversole's loan balance by twelve cents. On July 1, 2005, EMC transferred servicing of Eversole's loan back to CIT.

Eversole filed her First Amended Complaint on May 26, 2005. Pursuant to a Scheduling Order, she had until July 28, 2006 to complete all discovery related to class certification. Eversole timely filed her motion for class certification on August 28, 2006. Prior to the close of discovery, however, she moved to compel certain discovery from EMC [DE #35].

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and (3), Eversole seeks to certify a class defined as follows:

> Since January 2001, all individuals: (1) who have given mortgages on residential property located in Kentucky, (2) whose mortgage loan accounts relating to such property EMC has serviced, and (3) whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments to reduce principal and pay interest in accordance with the terms of their mortgage loans.

[DE #46, p. 1]. In her First Amended Complaint, she alleges claims that EMC "engaged in a widespread, common course of conduct" that included "the following systemic corporate practices":

> a.    Making standardized mortgage-related representations to consumers, containing material, false, misleading or unsubstantiated information relating to required payments, application of mortgage payments, or delinquencies or delinquency-related penalties on their mortgages, including the possibility of foreclosure;

b.      Claiming, attempting, or making threats, including threats of foreclosure or collection actions against consumers, when EMC knew or should have known that its rights to do so were not legitimate;

c.      Depriving consumers from [sic] the benefit of reduced principal and payment of interest under the amortization schedules applicable to their mortgage loans, by:

(a)     Placing or suspending customers' mortgage payments in accounts it creates or uses in a manner not called for under the terms of consumers' mortgage loans;

(b)     Applying consumers' mortgage payments first to unauthorized accounts it creates, other than ones to reduce principal and pay interest, as called for under consumers' mortgages;

(c)     Applying consumer mortgage payments to cover unwarranted delinquency-related fees or arrearage, rather than to the principal and interest; or

(d)     Failing to promptly or accurately post or credit consumers' mortgage payments to principal and interest, leading to the imposition of unwarranted delinquency-related fees, greater interest and principal being owed and paid over the life of their loans not in accordance with the terms thereof;

d.      Asserting the existence of legal rights against consumers relating to their mortgage payments and delinquencies, when EMC knew or should have known that such rights did not exist or were not ripe for enforcement; and

e.      Willfully or intentionally engaging in the conduct described above.

[DE #10, ¶¶27-28]. In her Motion for Class Certification, Eversole adds the following allegations

against EMC, a number of which are not included in her First Amended Complaint:

(a)     imposed and collected late fees when loan payments were made timely and then pyramided late charges in violation of the Plaintiffs' mortgage agreements;

(b)     failed to disclose to Kentucky consumers fees and charges added surreptitiously to their accounts;

(c)     failed to follow the terms and conditions of the promissory notes and mortgages relating to fees and charges, the calculation of fees and charges, and the application of payments made by Plaintiffs and the Class Members;

(d)     failed to make payments or apply payments for insurance and taxes, even though EMC collected funds and placed them in escrow for the payment of insurance and taxes;

3

(e)     imposed and collected attorneys' fees that have not been actually incurred;

(f)     imposed and collected property inspection fees, "property preservation" fees, and appraisal fees, and other fees and charges that were not authorized, not necessary, not included in Plaintiffs' original mortgage agreements, excessive, or have not been actually incurred;

(g)     marked up such fees and charges that were incurred to enrich itself at the expense of Kentucky consumers;

(h)     failed to comply with The Real Estate Settlement Procedures Act (RESPA) requirements concerning responding to RESPA inquiries;

(i)     maintained a pattern and practice of sending out incomplete, inconsistent, and confusing information to EMC's customers concerning their accounts;

(j)     claiming, attempting, or threatening to enforce debts against Kentucky consumers when EMC knew that the debts were not legitimate;

(k)     asserting the existence of legal rights against Kentucky consumers when EMC knew that such rights did not exist;

(l)     willfully sending mortgage loan statements and other correspondence to Kentucky consumers or family members with such frequency as can reasonably be expected to harass the borrower or his or her family; and

(m)     willfully engaging in the conduct described above which can reasonably be expected to abuse or harass the borrower or any member of her or his family.

[DE #46, pp. 3-4].

Based upon these practices, Eversole alleges claims for breach of contract,[1] unjust enrichment, money had and received, and declaratory and injunctive relief on behalf of the class.

In her Motion for Class Certification, Eversole specifically alleges her injury as follows:

a.     EMC has failed to reduce principal in January 2005 and at other times in accordance with her mortgage by the amount of on-time mortgage payments and additional principal payments, and more accrued interest is due because the amount of principal upon which it was calculated was greater than it should have been;

b.     EMC's conduct has resulted in principal not being timely reduced and accrued interest being calculated and owed by Ms. Eversole on a greater amount of principal than should be the case over the life of her mortgage;

---

[1]  The Court notes its prior ruling that the "plaintiff never entered into a contract with EMC" and that "she is not in privity with EMC."  [DE #21, p. 3].

4

     c.      EMC has caused Ms. Eversole to owe more and to pay more than called for under her promissory note and mortgage, and deprived her of the benefit of timely reductions in principal and payment of interest under the terms of her mortgage;

     d.      EMC made expressly or by implication standardized mortgage-related oral and written representations to Ms. Eversole, which contained material, false or misleading debt collection information relating to required payments, application of mortgage payments, or delinquencies or delinquency-related penalties;

     e.      EMC claimed it was entitled to foreclosure, when EMC knew or should have known that foreclosure was not legitimate and it had no legal right to foreclose;

     f.      The foregoing conduct on the part of EMC was not by mistake but was intentional, and could reasonably be expected to abuse or harass or injure Ms. Eversole.

[DE #46, pp. 7-8].

EMC responded that the Motion for Class Certification should be denied for any one or all of the following reasons:  the class is defined in such a way that its members and their number cannot be identified until there is a determination on the merits of each of their claims; Eversole's claims are not typical of the class; Eversole has no standing to seek injunctive relief pursuant to Rule 23(b)(2); and Eversole has failed to demonstrate the commonality and predominance required by Rule 23(b)(3).

## II.   ANALYSIS

### A.   Burden of Proof and Requirements

"The party seeking the class certification bears the burden of proof."  *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  A plaintiff seeking to certify a class must meet all four requirements of Rule 23(a) and one of the requirements of Rule 23(b).  Rule 23(a) permits one or more members of a class to sue on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  A plaintiff seeking certification of a class under Rule 23(b)(2) must also show that the defendant "has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  For certification under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

"The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *American Medical Systems*, 75 F.3d at 1079. "[A] district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. General Motors* Corp., 133 F.3d 388, 397 (6th Cir. 1998) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 1161 (1982); *American Medical Systems*, 75 F. 3d at 1078-79; *Reeb v. Ohio Dept. of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).  Conclusory allegations, without a factual record of persuasive evidence, are insufficient to show that the Rule 23 factors are met. *American Medical Systems,* 75 F.3d at 1084.  "The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it." *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 675 (7th Cir. 2001).  "[O]rdinarily, the determination should be predicted on more information than the pleadings will provide." *American Medical  Systems*, 75 F.3d at 1079; *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).

**B.      Whether the Class is Sufficiently Identifiable**

While it is true that every potential class member need not be identified at the beginning of an action, nonetheless, there must be a "class."  "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7 Wright and Miller, Federal Practice and Procedure, §1760 at p. 582.  "The order defining the class should avoid

subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)."  Manual for Complex Litigation, §21.222 (4th ed.), p. 305.  If the class definition requires a determination on the merits before a member can be identified, the plaintiffs have effectively reinstated "one-way intervention," which the 1966 Amendment to Rule 23 was designed to eliminate.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).  A ruling in favor of the defendant on liability would mean there is no class, so no unnamed plaintiffs could be bound by the unfavorable decision; yet these plaintiffs would have the full benefit of any decision in their favor.

"Courts have implied two prerequisites to class certification that must be satisfied prior to addressing the requirements of Rule 23(a):  (1) the class must be sufficiently defined so that the class is identifiable; and (2) the named representative must fall within the proposed class."  *Oshana v. The Coca-Cola Company*, 225 F.R.D. 575, 580 (N. D. Ill. 2005).  Proper identification of the class not only alerts the court "to the potential burdens class certification may entail," but also "insures that those individuals actually harmed by defendant's wrongful conduct will be the recipients of the awarded relief."  *Id.* citing *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981).

Nothing in Rule 23 "gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."  *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974).  In *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995), the court denied class certification under Fed. R. Civ. P 23(b)(3) where plaintiff defined the class as persons "who have received unsolicited facsimile advertisements" because that definition "requires addressing the central issue of liability to be decided in the case."  *Id.* at 403.  *See also Kenro, Inc. v. Fax Daily,* Inc., 962 F. Supp. 1162, 1170 (S.D. Ind. 1997) (The proposed class definition "would impermissibly require this Court to conduct individual inquiries into the merits of each potential plaintiff's case in order to determine their qualifications as class members"); *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985) (The class definition

"would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member"); *Dunn v. Midwest Buslines, Inc.* 94 F.R.D. 170, 172 (E.D. Ark. 1982) ("[T]hese [class] definitions depend on a finding of discrimination in order to define the class").

In the present case, the class is defined in such a way that no person could be a plaintiff unless "EMC failed to post or credit ... timely mortgage payments ... in accordance with the terms of their mortgage loans." [DE #46, p. 1]. Eversole identifies the common question of law among the class members as "whether his/her promissory note has been breached." [DE #53, p. 6]. The answer to this last question is a decision on the merits regarding liability; yet, it is the very same question that must be answered before the class could be certified. At the certification stage, the Court would be required to conduct a "mini-hearing on the merits" to determine the terms of each plaintiff's note and mortgage, and then determine whether EMC failed to post or credit any timely monthly payment in accordance with those terms. Only after completing individual decisions on the merits could any class be identified.

Eversole states her "Class definition does not require the court to determine whether EMC has engaged in unlawful conduct, such as whether EMC beached [sic] customers' promissory notes ..., which [sic] the 'merits' of Plaintiff's claims." [DE #53, p. 3]. This Court disagrees. That is the exact question that must be decided before the class can be ascertained. Accordingly, the Court finds that the proposed class definition is unworkable. Even if the Court were to attempt to redefine the class, the effort would be futile. As discussed below, the proposed class fails additional requirements of Rule 23.

Additionally, Eversole does not satisfy the proposed class definition. The undisputed evidence is that EMC posted Eversole's January mortgage loan payment in March as soon as it was received from CIT. If Eversole has some claim regarding untimely application of her payment,

8

it would appear to be against CIT for failure to give her prior notice that EMC would be servicing her loan and/or for failing to forward the payment to EMC the day after receipt.

### C.   Rule 23(a) Prerequisites

#### 1.   *Numerosity*

Eversole claims numerosity because EMC "serviced in excess of 150 loans for Kentucky residential mortgagors" in each year from 2001 through 2005 [DE #46, p. 11; #53, p. 4]. She also relies on testimony that EMC in Kentucky "had serviced 6,100 mortgages since 2001." *Id.* While this evidence shows the numerosity of the mortgages serviced by EMC in Kentucky, it fails to show that there was even one mortgage where EMC did anything improper. This information regarding mortgages serviced satisfies the first two criteria of the proposed class definition, but completely ignores the critical third factor.[2] With respect to the proposed class, the evidence does not show that even one timely mortgage payment was posted or credited later than the date it was received by EMC, much less that the mortgagor suffered a loss and EMC gained an improper benefit therefrom. Certainly, this evidence does not show that EMC failed to comply with the terms of any mortgagor's note and mortgage. If these numbers are to reflect the potential number of class members, then the class definition is overly broad in that it "includes persons who have not been, and will not be, harmed by Defendant." *See McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001). The evidence presented to this Court regarding Kentucky mortgagors allegedly harmed by EMC fails to show a class of even one or two people, much less a group so numerous that individual joinder of all members is impracticable. *See also Smith v. First Century Bank*, 2005 WL 1840251 at *7 (E. D. Tenn. 2005) (Proof of only bank's total number of customers, but not how

---

[2] The proposed class is defined as: "Since January 2001, all individuals: (1) who have given mortgages on residential property located in Kentucky, (2) whose mortgage loan accounts relating to such property EMC has serviced, and (3) whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments to reduce principal and pay interest in accordance with the terms of their mortgage loans." [DE #46, p. 1].

many actually suffered damages from improper transactions, was too speculative to satisfy numerosity).

Alternatively, Eversole has used such an unrefined measure of the class size that it is "too speculative for purposes of the numerosity requirement." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). In *Golden*, reference to the total number of tenants in Columbus was "not probative of the number of tenants reasonably likely to face the harm for which Golden seeks redress." *Id.* Likewise, reference to the total number of mortgages serviced by EMC since 2001 is not probative of any number of mortgagors harmed by EMC's alleged conduct.

Eversole has had a substantial period of time to conduct discovery regarding class certification. Her first complaint was filed April 1, 2005, and discovery regarding class certification did not close until July 28, 2006. Eversole has also deposed five EMC witnesses [DE #49, p. 13, uncontradicted]. Eversole complains that EMC has not been forthcoming in its responses, resulting in her motion to compel [DE #35]. Eversole's motion to compel is addressed separately below.

EMC notes that Eversole's counsel have been soliciting complaints from former EMC employees and EMC customers on the web for at least a year with a link that shows up second or third in any Google search for EMC Mortgage and encourages disgruntled persons to contact counsel [DE #49, p. 12; Exhibits B-C]. Additionally, EMC filed a Motion for Preliminary Injunction [DE #62] regarding ex parte contacts with EMC's current employees and advertisements airing in Dallas, Texas, and on the Internet to solicit former EMC employees to contact Eversole's counsel to help with their investigation into EMC's practices.

In her Reply in support of class certification, Eversole provides the affidavit of Alfred Scudieri, an investigator in the firm of Eversole's counsel, that the firm's solicitations for complaints regarding EMC has surfaced a number from around the country and that there are news reports of other investigations of EMC [DE #53, 4-5]. EMC moved to strike the affidavit on grounds that it is an improper introduction of previously available evidence in a reply, it is irrelevant, and it is

10

inadmissible hearsay [DE #54]. EMC's arguments in this regard are well taken. The affidavit provides no information regarding the nature of any of the complaints, nor whether any one of them was made by a Kentucky resident. Thus, it provides no relevant evidence whatsoever in support of Eversole's claim of numerosity. *See Ploog v. HomeSide Lending, Inc.*, 2001 WL 1155288 at *5 (N.D. Ill. 2001) (Evidence of complaints to the FTC and to Internet bulletin boards indicate some customer service problems, but do not demonstrate a standard or routine way of operating in violation of RESPA). Moreover, the affidavit is such inadmissible hearsay that this Court will not consider it in support of any certification finding. *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 319 (5th Cir. 2005).

Despite these extraordinary efforts to discover Kentucky residents with complaints against EMC, Eversole does not support her motion for class certification with admissible evidence that there is even one Kentucky resident meeting the class definition, much less that there is a sufficient number to make joinder impractical. Accordingly, this Court finds that Eversole has failed to meet her burden of establishing numerosity of the proposed class.

2.     *Commonality*

For a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where there are common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397. Rule 23(b)(3) provides the more stringent requirement that common issues *predominate*; accordingly, commonality analysis will be deferred to the discussion of that subject under Rule 23(b)(3).

11

3.       *Typicality*

The typicality test "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *Sprague*, 133 F.3d at 399 (quoting *American Med. Systems*, 75 F.3d at 1082). To determine typicality, the court should examine what the named plaintiffs are seeking and the evidence as to the likely claims of the rest of the class to see if there is a sufficient relationship between them. *Reeb*, 435 F.3d at 644; *Sprague*, 133 F.3d at 399. "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *American Medical Systems,* 73 F.3d at 1082. "The premise of typicality requirement is simply stated:  as goes the claims of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.  Typicality is not met "if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class." *Reeb*, 435 F.3d at 645.

In *Stout v. Byrider*, 228 F.3d 709 (6th Cir. 2000), class certification was denied for lack of typicality when the plaintiffs' claims against an auto dealer involved defrauding customers by selling vehicles with concealed damage.  All of the plaintiffs purchased cars from the same dealer and financed through an affiliate on standardized forms.  Dealer personnel were trained to handle sales and financing transactions in a uniform manner and followed standardized guidelines for procedures for closing loans,  *Id.* at 713.  The court noted discrepancies between the plaintiffs and the proposed class members, however, regarding the type of car purchased, the repairs needed, individual circumstances and transactions surrounding each purchase, the understanding of each regarding the terms and conditions of their purchase agreements, and the like.  *Id.*   at 717. Accordingly, the court found that the plaintiffs' claims were not typical of the class.

In *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), the Sixth Circuit reversed class certification of a group of retirees who claimed GM had entered into side deals with them to

provide them lifetime health benefits.  Since each claim "depended on each individual's particular interactions with GM" and those interactions varied, a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim."  Accordingly, the claims lacked typicality.

In *Brooks v. Southern Bell Tel & Tel. Co.*, 133 F.R.D. 54 (S. D. Fla. 1990), the court denied class certification to former employees of Southern Bell who claimed their employment contracts and tenure entitled them to free local and long distance service upon retirement.  The court noted that some representative plaintiffs based their contract claims on letters or forms, others relied on oral representations.  It further noted that "each alleged contract is based on a unique set of facts which each prospective plaintiff must allege and prove."  *Id.* at 56.  In denying certification based on a lack of typicality, the court said:

> To meet the typicality requirement, the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims.  If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims.  Courts have repeatedly held representatives' claims to be atypical if they are grounded in factual situations differing from those of other class members.

*Id.* at 58, internal citations omitted.  Because the contract claims involved factual variances, unique defenses, and varying state laws, the court held it was "impossible for the plaintiffs to have claims typical of the proposed class."  *Id.*

Finally, the case of *Ploog v. HomeSide Lending, Inc.*, 2001 WL 1155288 (N. D. Ill. 2001) involves an issue similar to one of the prospective class claims in this case.  There, plaintiff's mortgage account was erroneously charged for real estate taxes for property plaintiff did not own. Plaintiff made repeated calls and sent at least two letters in efforts to correct the error, but never received the corrective action or response she claimed was required under the Real Estate Settlement Procedures Act ("RESPA").  Additionally, she was charged a late fee and was reported to a credit bureau.  Plaintiff filed a class action alleging HomeSide had a pattern or practice of violating RESPA.  The court held the claims were not typical because proof that HomeSide violated

RESPA with respect to Ploog would not result in a finding that HomeSide violated RESPA with regard to any other class member. Each plaintiff would have to prove liability individually by showing that it submitted a "qualified written request" and that HomeSide violated RESPA with respect to that plaintiff. "[A] plaintiff's claims are not typical of the class's claims if 'proving them does not necessarily prove all the proposed class members' claims.'" *Id.* at *6.[3] The same would be true here with respect to Eversole's claim that EMC "failed to comply with the Real Estate Settlement Procedures Act (RESPA) requirements concerning responding to RESPA inquiries." [DE #46 p. 4].

Eversole seeks to certify a class "whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments to reduce principal and pay interest in accordance with the terms of their mortgage loans." To establish liability, each plaintiff would be required to prove the "terms" of their individual note and mortgage, that they individually made timely payments to EMC, and that EMC's treatment of the timely payments violated the terms of their note and mortgage. Even if Eversole could prove that EMC violated the terms of her note and mortgage, that would not prove that EMC violated anyone else's note and mortgage. As in *Sprague*, each claim depends on individual interactions with the Defendant.

Even if Eversole were to allege and prove that some group of the proposed class had notes and mortgages that were virtually identical, as was the case in *Stout*, each plaintiff would still need to prove individualized facts regarding the timing of payments made and EMC's handling of each payment to establish liability for any harm to them. Proof that EMC did not initially give Eversole retroactive credit on principal for her $3.44 payments would not prove that any other plaintiff made excess payments and did not receive appropriate credit. The liability of EMC to any plaintiff is tied completely to that plaintiff's individualized transactions with EMC.

---

[3] "Where there are distinctions, typicality is usually found where the common facts almost entirely establish liability and the individual issues relate to other matters." *Id.*

The lack of typicality becomes even more clear when reviewing some of the additional class allegations in Eversole's motion.  For example, she alleges that EMC "imposed and collected late fees when loan payments were made timely and then pyramided late charges," "failed to make payments or apply payments for insurance and taxes," "imposed and collected attorneys' fees," "imposed and collected property inspection fees, property preservation fees, and appraisal fees." [DE #46, pp. 3-4].  However, Eversole was not charged and has not paid any late fees, property inspection fees, property preservation fees, appraisal fees or attorney fees.  Eversole Depo. 137, 145-146; Dillard Aff. ¶¶17-18.  She has never had an escrow account for taxes and insurance. Eversole Depo. 140; Dillard Aff. ¶19.  If any class members will be asserting these claims, "then there needs to be a class representative who is arguing the same thing – or the plaintiffs must show how their claims are typical in the absence of such a named plaintiff – in order for the district court to find typicality."  *Reeb*, 435 F.3d at 645.  Eversole has not shown that her claims are typical of the class.

Moreover, with respect to Eversole, EMC has a defense that it did not receive a "timely" payment from Eversole in January.  She made her payment to CIT, and CIT delayed forwarding it to EMC for two months.  Thus, Eversole's claims are subject to a defense that is not applicable to the defined class of plaintiffs who made timely payments.  Additionally, the "injury" Eversole alleges is that EMC caused the class members to pay more interest and principal than required under the terms of their loans [DE #10, ¶28(d)].  However, Eversole does not contradict the affidavit of Dana Dillard, EMC's Senior Vice President, Customer Service, that Eversole's loan and the majority of loans that EMC services are "monthly accrual loans (as opposed to a daily simple interest loan)."  Dillard explains that "interest is accrued according to an amortization schedule determined at the outset of the loan" and that "the amount of interest owed does not change based on the date the monthly contractual payment of principal and interest is received or posted to the

15

account." [DE #49, Dillard Affidavit, ¶20]. Eversole is not typical of the defined class because she did not pay any additional interest as a result of her payment being received late by EMC.

Eversole's claims become even more atypical when she alleges that representations were made to consumers "containing material, false, misleading or unsubstantiated information relating to required payments," that EMC made "threats of foreclosure or collection actions" when it "knew or should have known that its rights to do so were not legitimate," and that it asserted "the existence of legal rights against consumers relating to their mortgage payments and delinquencies, when EMC knew or should have known that such rights did not exist or were not ripe for enforcement." Assuming these allegations could give rise to liability on the part of EMC, each plaintiff would have to prove what specific representations or threats were made, that the person making the representations or threats was authorized to do so, what the status of the plaintiff's account was at the time, and what knowledge EMC had or should have had at the time that its rights were not legitimate. Proof of each plaintiff's understanding of the representations or threats and action taken thereon would also be required to prove liability. Proof offered by Eversole regarding representations or threats improperly made to her by an authorized person when her account was not delinquent would not provide proof of EMC's actions toward or liability to anyone else.

"[W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *American Medical Systems*, 75 F.3d at 1084. Such was the case in *Olden v. LaFarge Corp.*, where liability for all plaintiffs could be established by proof that the defendant's cement manufacturing plant emitted toxic pollutants that caused property damage, and *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87 (S.D.N.Y. 1981), where securities fraud liability to all plaintiffs could be established by proof that the defendants traded stock while having material inside information that was not

disclosed to the public.  By contrast, proof of liability here is individualized and will require a series of mini-trials for each plaintiff.  Accordingly, this Court finds that Eversole's claims are not typical of the proposed class.

### 4.    *Adequate Representation*

A class may be certified only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members."  *American Medical Systems*, 75 F.3d at 1083.  The Sixth Circuit has established a two-part test for determining adequacy of representation:  (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.  *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  It is not necessary to consider the second factor here because Eversole is not an adequate representative of the class.  "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."  *American Medical Systems*, 75 F.3d at 1083.  This Court has already found that Eversole's claims are not typical of the class.  For these same reasons, Eversole is not an adequate representative for the class.

Additionally, Eversole admits that her loan is no longer serviced by EMC.  Eversole Depo. p. 54.  She cannot show that she would suffer future injury from EMC if it is not enjoined.  *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 550 (6th Cir. 2003) (Bowman has no standing to seek injunctive relief since enjoining the contract will not affect her in any way); *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970) ("[T]he claims of the named plaintiffs, the Cashes, for injunctive relief having been satisfied, 'they cannot represent a class of whom they are not a part'" (quoting *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)).  Accordingly, Eversole has no standing to seek injunctive relief on her own behalf or on behalf of the class.  "Past exposure to

illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). In *Calkins v. Fidelity Bond and Mortgage Company*, 1998 WL 719569 (N.D.Ill. 1998), Calkins' loan had been transferred to another servicer; thus he had no current claim for equitable relief. "This means that he no longer [has] standing to pursue his equitable claims and may not serve as the class representative with regard to those claims." *Id.* at *1. Like Calkin, Eversole is not an adequate representative of the class for purposes of injunctive relief.

### D.   Whether Class Should Be Certified Pursuant to Rule 23(b)(2)

Even if another representative plaintiff could be found who has standing to seek injunctive relief, it would not be proper to certify this class under Rule 23(b)(2). That subsection requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). In *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir. 2002), the Sixth Circuit reversed certification of a Rule 23(b)(2) class of African American consumers who were charged a finance charge markup greater than the average finance charge markup charged white consumers because "the injunctive relief requested in this case does not predominate over the monetary damages due to the highly individualized determinations that would be required to determine those damages." *Id.* at 447. The same is true here where damage calculations are highly individualized and predominate over any injunctive relief sought.

Eversole relies on the Second Circuit's analysis in *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001) to support her entitlement to certification under Rule 23(b)(2) [DE #46, p. 23]. In *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639 (6th Cir. 2006), however, the Sixth Circuit declined to follow this Second Circuit decision and reaffirmed *Coleman* with its reliance on the Fifth Circuit's analysis in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th

Cir. 1998). *Id.* at 648-651. In *Reeb*, the Sixth Circuit once again reversed class certification under Rule 23(b)(2) where individual compensatory damages predominated over requested declaratory or injunctive relief.

Eversole seeks compensatory damages for herself and the class through claims for breach of contract, unjust enrichment, and money had and received, and further seeks declaratory and injunctive relief as follows:

> Plaintiff, on behalf of herself and all Class Members, seek [sic] a judgment declaring Defendant's conduct unlawful, and that Defendant must cease the course of conduct described above and providing [sic] for adequate procedures and policies for the immediate and complete refund of illegal and unwarranted amounts assessed or attributable to EMC's failure to reduce principal and pay interest on Plaintiff and Class Members' mortgage-related indebtedness.

[First Amended Complaint ¶80. In other words, the injunctive relief sought is that EMC should cease its alleged improper behavior and adopt procedures to retrospectively provide compensatory damages to Eversole and the class members. There is no request to enjoin any future conduct on the part of EMC.

In *Hyderi v. Washington Mutual Bank, FA*, 235 F.R.D. 390 (N. D. Ill. 2006), mortgagors brought a class action against a loan servicer for violation of RESPA and loan agreements for failing to make insurance payments from an escrow account without an invoice from the insurer. Relying on Seventh Circuit analysis consistent with *Reeb*, the court declined certification under Rule 23(b)(2) because damages were not "incidental" to the requested injunctive relief. *Id.* at 397-98. "Instead, the proposed injunctive relief effectively is an injunctive order to Washington Mutual to audit each class member's account and pay him or her damages." *Id.* at 398. Eversole seeks similar relief here. *See also Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Ky. 1981) in which the court refused certification under Rule 23(b)(2) because "[t]his action primarily seeks money damages." As in *Coleman* and *Reeb*, damages predominate over any injunctive relief in the present case; thus, this Court finds that certification under Rule 23(b)(2) is not appropriate.

19

### E.        Whether the Class Should Be Certified Pursuant to Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.  *American Medical Systems*, 75 F.3d at 1084.

A good example of a common issue predominating is found in *Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129 (E.D. Ky. 1981).  There, every class member purchased a vehicle from Joe Conrad Chevrolet and financed the purchase through GMAC.  The financing form used for each sale was identical or substantially similar, and the issue was whether that form violated the Truth in Lending Act.  The action was "essentially one of statutory interpretation."  *Id.* at 131. If one plaintiff established the form violated the statute, liability was proven for the entire class.  *See also Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) where liability could be proven on a class-wide basis from evidence regarding the defendant's emission of toxic pollutants.

By contrast, in *Chase Manhattan Mortgage Corp. v. Porcher*, 898 So. 2d 153 (Fla. App. 4 Dist., 2005), two mortgagors alleged that Chase had a deliberate practice of assessing late fees for mortgage payments that were timely received.  They sought to certify a class of Florida property owners having mortgage loans serviced by Chase who were assessed late charges for mortgage payments received prior to the expiration of their grace period.  The trial court certified the class, but the appellate court reversed because individual issues of liability would predominate, "namely whether each individual borrower's payments were received within the grace period."  *Id.* at 158. The case would require "mini-trials on liability," because "class members' claims cannot be determined by class-wide proof."  *Id.* at 157.  The court distinguished case law permitting class

certification despite individualized proof on damages, since proof of liability was also individualized in *Porcher*.  *Id.* at 158.

Similarly, in *Ploog*, the court said certification "under Rule 23(b)(3) is improper where liability determinations are both individual and fact-intensive."  2001 WL 1155288 at *7.  It declined to certify any class regarding alleged RESPA violations "because of the fact-intensive individual inquiries required to determine liability as to each plaintiff."  It also noted that "[c]lass certification is consistently denied in transaction-specific cases such as the one at bar."  *Id.*

In *Stout v. Byrider*, 228 F.3d 709 (6th Cir. 2000), the court held that common issues did not predominate, despite standardized automobile financing forms and standardized closings, because the fraud and Truth in Lending Act claims required individualized proof on the liability issue of whether a plaintiff relied on any false representations or failures to disclose and, if so, what were the resulting damages.  *Id.* at 718.

In *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), the Sixth Circuit reversed a class certification of GM retirees.  There was no commonality under a contract theory because each alleged contract involved different documents and representations at different locations and times.  "Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree."  *Id.* at 398.  "Because each plaintiff's claim depended upon facts and circumstances peculiar to that plaintiff, class-wide relief was not appropriate."  *Id.*

The plaintiffs' claims in the present case are like *Porcher, Plogg, Stout and Sprague* in that proof of liability under a contract theory or a quasi contract theory will require individualized proof for each plaintiff regarding their loan documents and their specific transactions with EMC.  Proof of misrepresentations would entail individualized evidence of representations made, by whom, the plaintiff's understanding of the representations, and reliance thereon.  Liability under a RESPA violation theory would require proof of a qualified written request by each plaintiff and the

subsequent violating conduct by EMC.  When such individualized proof of liability is involved, it eliminates the efficiencies associated with adjudicating claims on a class-wide basis.  Not only is the proof of liability individualized in this case, but also the proof of damages is specific to each plaintiff.  Accordingly, individual issues heavily predominate over any common issues, making this action inappropriate for certification under Rule 23(b)(3).

Plaintiff Eversole has failed to meet her burden of demonstrating numerosity, commonality, typicality, adequacy of representation, a predominance of declaratory or injunctive relief, or a predominance of common issues.  Having failed to meet all of the requirements of Rule 23, this Court finds that Eversole's motion for class certification must be denied.

## III.   Motion to Compel

Eversole moved to compel discovery regarding four requests for admission, two interrogatories, and four requests for production [DE #35].  She claimed EMC's responses to these requests were necessary to identify class members and establish numerosity.  EMC objected to the requests and the motion to compel on several grounds, including that the requested discovery is irrelevant and unduly burdensome to produce [DE #41].  The Magistrate Judge denied the motion without prejudice, pending a ruling on the motion for class certification [DE #76].  Eversole objected to the order [DE #77] and EMC responded to the objections [DE #78].  Accordingly, this matter is ripe for decision.

The Court has carefully reviewed the record regarding the motion to compel and holds that the motion was properly denied and is now denied with prejudice.  A party is entitled to discovery regarding any matter "that is *relevant* to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1), emphasis added.  "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided."  *Green v. Nevers,* 196 F.3d 627, 632 (6th Cir. 1999); *United States v. Dairy Farmers of America, Inc.*, 426 F.3d 850, 862 (6th Cir. 2005).

To support her claim that EMC systematically "failed to apply or post payments to principal and interest ... promptly and accurately, which has routinely led to the imposition of unwarranted fees" [DE #42, p. 2], Eversole requested information regarding Kentucky mortgagors whose monthly payment was posted more than thirty days after the due date [DE #35, p. 7, Interrogatory No. 3]. She then sought information regarding the resulting number of mortgagors for whom the payments were not applied retroactively to reduce principal and interest [*Id.* at 8, Interrogatory No. 4]. For each person in this resulting group, Eversole sought production of their loan histories [Request for Production No. 10]. Thus, EMC would be required to locate and produce voluminous histories for every customer who made one late monthly mortgage payment to EMC after January 2001. This discovery would prove only that many people make late mortgage payments. That is totally irrelevant to the proposed class.

Eversole sought documents relating to communications to mortgagors that their payment had been posted more than thirty days after the due date [Request for Production No. 15] and documents relating to any claim of improper posting or crediting of monthly mortgage payments [Request for Production No. 3]. Eversole never explained how such broad requests that greatly exceed the proposed class definition could be relevant. She also used requests for admission as though they were interrogatories and basically demanded that EMC search all of its files for persons who might meet the proposed class definition [Requests for Admission 37, 53, 55, 61]. EMC appropriately objected that Eversole's claim was not typical of the proposed class, and she could not be an adequate representative for the defined class. As discussed above, these deficiencies in Eversole's First Amended Complaint were obvious. Accordingly, the requested discovery was not relevant, and denial of the motion to compel was appropriate. The Court further finds that, even if some possible relevance to Eversole's claim could be found, the discovery requests required manual searches of EMC's files which would be unduly burdensome. [*See* DE #41, pp. 8-9, 11-12; DE #78, pp. 10, 12, 13-14, 15]. Accordingly, the motion is denied.

23

IV.     **Motion for Temporary Injunction**

EMC moved for a preliminary injunction against ex parte contacts with defendant's current employees and against misleading advertising [DE #62]; Eversole responded [DE #68]; EMC replied [DE #72]; and Eversole filed a surreply [DE #75].  While the allegations in these pleadings are of concern to the Court, this motion will be passed pending a determination of the jurisdiction of the Court to proceed with this matter, as discussed below.

V.      **Jurisdiction**

Although the parties have not raised the issue of jurisdiction over this action, "federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists."  *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998).  Eversole alleged subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) relating to class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  This Court has declined to certify the class.  Accordingly, there no longer appears to be any basis for this Court's jurisdiction.  From the record herein, the Court is not satisfied that Eversole could satisfy the jurisdictional minimum for an individual action if her complaint were so amended.  Accordingly, the Court, being otherwise fully advised, orders the parties to brief the jurisdictional issue according to the schedule set forth below.

VI.     **CONCLUSION**

The Court having considered the record herein and otherwise being sufficiently advised;

**IT IS ORDERED** that:

A.      Plaintiff's Motion for Class Certification [DE #46] is **DENIED**;

B.      Plaintiff's Motion to Compel [DE #35] and Objections to Order [DE #77] are **DENIED**;

C.      Defendant's Motion to Strike Scudieri Affidavit [DE #54] is **GRANTED**;

24

D.      Defendant's Motion for Preliminary Injunction [DE # 62] is **PASSED** pending the Court's determination on the issue of jurisdiction; and

E.      The parties shall brief the issue of jurisdiction as follows:

   1.      Within seven days of entry of this Order, the plaintiff shall file a memorandum not to exceed five pages in support of this Court's jurisdiction over this matter;

   2.      Within five days thereafter, the defendant shall file a responsive memorandum of the same length; and

   3.      The matter shall then stand submitted on the issue of jurisdiction.

This May 29, 2007.

**Signed By:**

**_Karl S. Forester_**   K S F

**United States Senior Judge**